(No. 29964.—

THE PEOPLE *ex rel.* Frank Siegal, Appellant, *vs.* HARRY K. ROGERS *et al.,* Appellees.

*Opinion filed May 22, 1947.*

McCarthy, Toomey & Reynolds, (Frank A. McCarthy, and John E. Toomey, of counsel,) all of Chicago, for appellant.

Peter J. Struck, (Thomas A. Matthews, of counsel,) both of Chicago, for appellees.

Mr. Justice Wilson delivered the opinion of the court:

The relator, Frank Siegal, filed in the superior court of Cook county a petition for a writ of *mandamus* to compel defendants, the village of Skokie and the president, treasurer, clerk, trustees and fire and police commissioners of the village, to reinstate relator as a member of the police department of the village and for the payment of salary as a patrolman from the date of his allegedly wrongful discharge. Defendant answered the petition, evidence was heard and the court entered judgment that the writ issue. Upon appeal, the Appellate Court for the First District reversed and remanded the cause, with directions to deny the writ. We have granted Siegal's petition for leave to appeal.

Relator joined the police force of the village of Skokie in May, 1934, pursuant to a verbal appointment made by

the village president. Early the following year, the president administered the oath of office to relator, no one else being present on this occasion. Relator has never filed an oath of office or bond with the village clerk, nor has he ever been appointed to the police force by action of the village trustees. The village, on April 17, 1945, adopted article 14 of the Revised Cities and Villages Act providing for fire and police commissioners. (Ill. Rev. Stat. 1945, chap. 24, par. 14-1 *et seq.*) The employment of relator and payment of his salary continued until April 28, 1945, when he was discharged by the chief of police without charges being filed against him and without a hearing before the fire and police commission. Relator contends that the Fire and Police Commissioners Act, as amended, abolishes the distinction between *de jure* and *de facto* policemen in municipalities adopting the act and insists that he is entitled to the protection of the act.

At the outset, it must be observed that the office of policeman or police patrolman or member of a police department was unknown to the common law. Unless created by statute or by ordinance adopted under statutory authority no such office legally exists. (*Gersch* v. *City of Chicago,* 250 Ill. 551; *Bullis* v. *City of Chicago,* 235 Ill. 472.) Because the office of policeman is not created by statute, it exists, if at all, by virtue of municipal ordinance. (Ill. Rev. Stat. 1945, chap. 24, pars. 9-75, -76, -83, -84; *Moon* v. *The Mayor,* 214 Ill. 40; *Stott* v. *City of Chicago,* 205 Ill. 281.) Prior to relator's discharge, the village of Skokie had never established a police department nor created the office of policeman or police patrolman. The subject of a police force was governed by a 1906 ordinance, providing in pertinent part: "The village police shall consist of the regularly appointed village marshal, and such other deputy marshals * * * as may be from time to time appointed by the president and board of trustees." Relator does not seek restoration to the office

of deputy marshal and, in any event, the ordinance was insufficient to create the office. (*Moon* v. *The Mayor*, 214 Ill. 40.) In like manner, the village appropriation ordinances, pursuant to which relator was paid as a policeman, were insufficient to create the office of policeman. *Bullis* v. *City of Chicago*, 235 Ill. 472; *Moon* v. *The Mayor*, 214 Ill. 40.

Assume the lawful creation of the office of policeman and relator's appointment to the village police force becomes subject to attack. At the time of the appointment, the applicable section of the Cities and Villages Act provided, "The president and board of trustees may appoint * * * a village marshal, and such other officers as may be necessary to carry into effect the powers conferred upon villages, * * *." (Smith-Hurd Stat. 1933, chap. 24, par. 152.) Relator having been appointed by the president alone, and never by the president and trustees, the appointment, considered as an appointment to an office, was clearly in contravention of this statute. (*People ex rel. Janosky* v. *Novotny*, 273 Ill. App. 254; *McKean* v. *Gauthier*, 132 Ill. App. 376; Ill. Rev. Stat. 1945, chap. 24, par. 9-84.) In addition, relator failed to file an oath of office with the village clerk, as required by statute. Smith-Hurd Stat. 1933, chap. 24, par. 87.

Defendants contend that, in the absence of an ordinance creating the office of policeman and by reason of the failure to observe the statutory requirements pertaining to appointment to office, relator was no more than a *de facto* officer of the village of Skokie during his entire period of service on the village police force. The village bottoms its case on the long-established rule that an officer seeking *by mandamus* to compel reinstatement to office or the payment of compensation must show that he is an officer *de jure,* and not merely an officer *de facto.* (*People ex rel. Dunderdale* v. *City of Chicago*, 327 Ill. 62; *People ex rel. Jacobs* v. *Coffin,* 282 Ill. 599; *Gersh* v. *City of Chicago*, 250 Ill. 551;

*McNeill* v. *City of Chicago,* 212 Ill. 481; *Stott* v. *City of Chicago,* 205 Ill. 281.) Relator contends, however, that the distinction between *de jure* and *de facto* police officers has been abolished by the Fire and Police Commissioners Act or, in the alternative, that the act gives him the status of a municipal officer. Adopted by the village at a referendum election on April 17, 1945, the act provides for the establishment of a special civil service commission and regulates the examination, appointment and discharge of officers and members of the fire and police departments. Relator bases his right to reinstatement on the provisions of the statute relating to discharge, and the issue presented for our determination is the proper construction of the act, as amended. Originally enacted in 1903, section 12 of the act then prescribed as follows: "No officer or member of the fire or police department of any such city, who shall have been such for more than one year prior to the passage of this act, or who shall have been. appointed under the rules and examination provided for by this act, shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense." (Laws of 1903, p. 99.) In *Moon* v. *The Mayor,* 214 Ill. 40, this court held that a policeman summarily discharged after more than one year's service prior to the passage of the act must show that he was a *de jure* officer in order to be protected by its provisions, and that the absence of a city ordinance creating the office of policeman resulted in him being merely a *de facto* officer.

In 1937, the General Assembly amended section 12 by adding the following paragraph: "The term officer or member of the fire or police department of such city, village or incorporated town as used herein shall include all officers and members of the fire and police departments of such cities, villages or incorporated towns who shall have been employed as regular members of such fire or police department for more than one year. Such regular em-

ployment for more than one year shall constitute such officers or members city officers." (Ill. Rev. Stat. 1937, chap. 24, par. 854.) Section 12 of the Fire and Police Commissioners Act was renumbered section 11 of article 14 in the enactment of the Revised Cities and Villages Act of 1941 and the verbiage of the discharge provisions was slightly modified so that the relevant portion now reads: "No officer or member of the fire or police department of any municipality which adopts this article, who has held that position for more than one year prior to the adoption of this article by that municipality, or who has been appointed under the rules and examination provided for by this article * * * shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense." The second paragraph provides, "All officers and members of either the fire or police department of any municipality holding their positions by virtue of one of the methods specified in paragraph one of this section, are city officers and shall be entitled to the protection afforded by this article."

Relator asserts that he held the position of member of the village police department for more than one year prior to the adoption of the act and contends that, as a consequence of such employment, he is a village officer and entitled to the protection of the act and that he cannot be discharged except for cause and after a hearing before the commission. In short, relator insists that the language of the statute is clear, definite and unambiguous and that section 11 means precisely what it says. Defendants take the position, and the Appellate Court so held, that despite the 1937 and 1941 amendments relator was merely a *de facto* member of the police department, subject to discharge at will and not entitled to reinstatement. Their argument is confined to a repetition of the general rule that one seeking reinstatement to an office must show that he is a *de jure* officer and to the contention that no writ compelling

a municipality to pay money may properly issue unless it is shown that there are available funds in the treasury.

While defendants adopt the premise that the law relating to the reinstatement of summarily discharged policemen has remained unchanged through the years, they fail to offer any explanation of the amendments to the Fire and Police Commissioners Act. A consideration of the language of section 11 against its historical background leads inevitably to the conclusion that, in enacting the 1937 amendment, it was the manifest intention of the legislature to limit the rule as laid down in *Moon* v. *The Mayor,* 214 Ill. 40, and that the same intention prevailed when the act was revised in 1941. Legislative intent is abundantly apparent. Paragraph 2 of section 11 now provides that all officers and members of the police department who have held their positions for more than one year prior to the adoption of the act are city officers and shall be entitled to the protection of the section. The act describes a member of the police department as holding a "position" and not an "office." This is not without significance, because a municipal position need not be created by formal ordinance but may be established by contract, express or implied, and because an appropriation ordinance accompanied by performance of the duties of the position is sufficient to establish the existence of a position. (*People ex rel. Jacobs* v. *Coffin,* 282 Ill. 599.) Relator, having performed the duties of policeman for eleven years prior to his discharge and having been paid therefor by appropriate ordinances, must be deemed to have held the position of policeman. The plain meaning of the statute is that one who holds the position of member of a police department is automatically elevated to the status of a city officer. Thus, a municipality can no longer defeat a policeman's right to the protection of the statute by the simple expedient of refusing to enact an ordinance creating the office of policeman. A policeman meeting the requirements prescribed

by paragraph 1 of section 11 has been made a municipal officer by the addition of paragraph 2 of the section. Where a policeman has regularly performed the duties of a member of the police force for a period of one year prior to the adoption of the act and has been remunerated under the authority of an ordinance, a mere recital of the statute in a petition for a writ of *mandamus* to compel reinstatement obviates the necessity of showing that the office or position was created by ordinance, or that strict compliance was had with the statutory requirements of appointment to office. In short, the statute not only creates the office of municipal policeman, but also specifically directs that any person who has occupied the position of policeman for more than one year prior to the adoption of the act is a municipal officer and is entitled to the protection of the act.

Our interpretation of the statute is strengthened by a reference to the report of the municipal code commissioners, authors of the Revised Cities and Villages Act, as to their observations on the legislative intent incorporated in the 1937 amendment, "As far as we can tell from certain court opinions, the purpose of this last paragraph was to make it impossible for municipalities to avoid the protection afforded by old section 854 by the device of refusing to make policemen and firemen city officers. * * * Our substitute is designed to assure full protection to members of the fire and police department who become such by any one of the methods specified in the first paragraph of our new section. * * * The following briefs of Illinois decisions present the situation which in our judgment caused the amendment to be added in 1937: [citing *Moon* v. *The Mayor*, 214 Ill. 40; *Howard* v. *Mueller*, 252 Ill. App. 10; *Burley* v. *Barber*, 286 Ill. App. 486]." (Ill. Rev. Stat. Ann. 1945, chap. 24, par. 14-11, commission notes.) The expressed intent of the legislative draftsmen is reflected in the present statute. Like recognition was

accorded the 1937 amendment in *Reed* v. *City of Peoria,* 318 Ill. App. 271, where the Appellate Court for the Second District held that the rights of petitioners seeking reinstatement to the position of firemen could not be defeated by the absence of an ordinance creating the office of city fireman. The court observed that it was the intention of the legislature to give city firemen and policemen the status of municipal officers to the extent of making them eligible to apply to the courts for the protection of their rights under the act. Petition for leave to appeal to this court was denied.

To anticipate future objections, we recognize that the three cases cited by the commission hold that the respective relators were not *de jure* police officers solely on the grounds of the nonexistence of a legally created office. As a result, the contention may be advanced that while the amendments eliminate the requirement that the office of policeman be lawfully created by ordinance, still they do not discontinue the necessity of showing a proper appointment to membership on the police force as a prerequisite to the issuance of the writ. The unsoundness of the argument is revealed by the language of the statute which takes one holding the position of policeman and elevates him to the status of a municipal officer. The statutory provisions relating to the appointment of municipal officers are not controlling on appointments to municipal positions. Upon the authority of *People ex rel. Jacobs* v. *Coffin,* 282 Ill. 599, we hold that a position may be created and an appointment made thereto by contract, either express or implied, and that one may lawfully hold a municipal position by virtue of a colorable appointment coupled with performance of the duties of the position and remuneration therefor under applicable appropriation ordinances. Here, relator was appointed by the village president, performed the duties of policeman for eleven years and was remunerated pursuant to formal ordinances.

Defendants insist that, in any event, no writ of *mandamus* compelling the payment of money by a municipality may properly issue unless a showing be made that funds to make payment are available in the treasury. It is a complete answer to defendants' contention that the pleadings admit the passage of an appropriation ordinance for the year beginning May 1, 1945, providing for the payment of wages of policemen and police patrolmen. *People ex rel. Gramlich* v. *City of Peoria,* 374 Ill. 313.

The judgment of the Appellate Court is reversed and the judgment of the superior court of Cook county is affirmed.

*Appellate Court reversed;*
*superior court affirmed.*