THE PEOPLE *ex rel.* NICK G. BUBASH, Plaintiff-Appellee, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF THORNTON *et al.*, Defendants-Appellants.

(No. 57491;

First District (5th Division)—October 12, 1973.

Walker & Feikema, of Lansing, (Walter C. Wellman, of counsel,) for appellants.

Richard F. McPartlin, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff brought a mandamus proceeding to compel his reinstatement as captain of police on the Police Department of the Village of Thornton, relying on the provisions of the Fire and Police Commissioners Act (Ill. Rev. Stat. 1967, ch. 24, par. 10—2.1—1, *et seq.*).[1] After a trial without a jury the court entered judgment awarding plaintiff the writ of mandamus.

Defendants contend that they are not compelled by the Fire and Police Commissioners Act to reinstate plaintiff. Their argument is based, essentially, upon four points: (1) there was no valid ordinance establishing a regular police department at the time of plaintiff's employment by the Village of Thornton, (2) plaintiff was not a city officer, (3) plaintiff had not served as captain of police for more than one year prior to the adop-

---

[1] Those provisions of the Fire and Police Commissioners Act most relevant to this case are:

Ch. 24, par. 10—2.1—4:

\* \* \*

"If a member of the department is appointed Chief of Police or Chief of the Fire Department prior to being eligible to retire on pension he shall be considered as on furlough from the rank he held immediately prior to his appointment as chief. If he resigns as Chief or is discharged as Chief prior to attaining eligibility to retire on pension, he shall revert to and be established in such prior rank, and thereafter be entitled to all the benefits and emoluments of such prior rank without regard as to whether a vacancy then exists in such rank.

\* \* \*

Any full time member of a regular fire or police department of any municipality which comes under the provisions of this Division or adopts this Division 2.1 or which has adopted any of the prior Acts pertaining to fire and police commissioners, is a city officer."

Ch. 24, par. 10—2.1—7:

"Any full time member of a regular fire or police department of any municipality which comes under the provisions of this Division or adopts this Division 2.1 or which has adopted any of the prior Acts pertaining to fire and police commissioners, who shall have served at least one year as a full time member of such department, shall become a member of the classified service of the fire or police department respectively, in the position held by him at the time such municipality comes under the provisions of this Division, without examination."

Ch. 24, par. 10—2.1—17:

"Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense."

Ch. 24, par. 10—2.1—26:

"The provisions of this Division shall apply only to full-time firemen and full-time policemen of a regularly constituted fire or police department and not to any other personnel of any kind or description."

tion of the Act, and (4) plaintiff's appointment as captain of police was invalid.

It was adduced at trial that plaintiff had been appointed captain of police by the Mayor of Thorton in June 1967 and that plaintiff had performed his duties in this position until September 1967 when, by action of the Board of Trustees of the Village, he was made acting chief of police with the rank of captain. Plaintiff served continuously in this capacity until April 22, 1971. On that date he submitted his resignation as chief of police to the Village trustees requesting that he be retained in service at the rank of captain. On May 27, 1971, the Board of Fire and Police Commissioners of the Village accepted plaintiff's resignation but told him to remain as acting chief until he could be replaced. Plaintiff continued to perform his duties as acting chief until July 15, 1971, when he was informed by letter from the Secretary of the Board of Fire and Police Commissioners that he would not be returned to the rank of captain and that, in fact, his services "as far as the Police Department and as employee of the Village of Thorton are terminated." These facts were substantiated by the introduction into evidence by plaintiff of commission cards reciting his appointment as chief of police for the period of September 1, 1967, through April 30, 1971. The commission cards covering September 1, 1967, through April 30, 1968, and May 1, 1969, through April 30, 1970, indicated plaintiff served as chief of police with the rank of captain during these periods. In addition, a commission card issued by the Board of Fire and Police Commissioners dated May 1970 was introduced stating that plaintiff had been duly appointed to the office of chief of police with the rank of captain on June 1, 1967.

Plaintiff placed Village appropriations ordinances into evidence. Under the heading "Police Department" salaries were provided for both a captain of police and a chief of police through the year 1969. For the remainder of the period in question no salaries were provided for a captain of police.

Also introduced was the General Ordinance of the Village of Thornton of September 26, 1900, which provided for the appointment of special policemen. This ordinance purported to establish the office of special policemen to be appointed by the president of the Village. Persons appointed as special policemen would be "subject to all the rules and regulations governing the police force of said village and to such special rules and regulations as said president may make concerning such special policemen. They shall possess all the powers, privileges and duties of regular policemen, and may be removed from office at any time by said president without assigning any cause therefor." General Ordi-

nance of the Village of Thornton, September 26, 1900, Special Police, sec. 2.

On April 15, 1969, the Village of Thornton, by referendum, adopted the Fire and Police Commissioners Act. Two years later, on August 17, 1971 the Village passed an ordinance to establish a police department.

OPINION

● 1-4 The benefits of the Fire and Police Commissioners Act extend only to those persons who have served at least one year as a full-time member of a regular fire or police department prior to the adoption of the Act by a municipality. (Ill. Rev. Stat. 1967, ch. 24, par. 10—2.1—7.) Defendants here contend that the Village Ordinance of September 26, 1900, failed to establish a regularly constituted police department. Therefore, they claim, their dismissal of plaintiff without extending to him the procedural formalities to which a member of the classified service of a police department is entitled was not improper. We feel, however, that the Village of Thornton did indeed have a regularly constituted police department. To qualify as such a municipal law enforcement body "is not required to have a chief of police, captains, lieutenants, inspectors, etc. The police force consists of the personnel regularly employed in the performance of police duties." (*Donahue v. Board of Trustees*, 263 Ill. App. 568, 571.) Where it is the duty of a special policeman to assist in the preservation of order and in the enforcement of laws and ordinances, especially in light of his full-time employment and payment of a stipulated salary, the title of his position is insignificant. "[T]he very manner of the appointment of special policemen and the fixing of their tenure in office, make them policemen and a part of the police department." (*Donahue* at 571.) Although *Donahue* dealt with a mandamus proceeding to compel payment of a pension by one who was a long tenured special policeman and city marshal, the thrust of its holding is certainly applicable to the instant case. Here plaintiff served with all the "powers, privileges, and duties" of a regular policeman. He was a full-time employee of the Village, annually reappointed to his position. The municipal appropriations ordinances provided him with a stipulated annual salary. It cannot be contended that for the purposes of the qualification requirements of the Fire and Police Commissioners Act plaintiff was not a member of a police department.

■■ Defendants contend that plaintiff is not entitled to reinstatement because the offices of chief of police and captain of police were not created by statute or municipal ordinance. Apparently it is their belief that one must occupy a validly created municipal office before he can avail himself of the privileges and protection of the Fire and Police Commissioners Act. In support of this proposition defendants cite *Moon*

*v. The Mayor* (1905), 214 Ill. 40, 73 N.E. 408. In *Moon* a patrolman's plea for the issuance of a writ of mandamus to compel his reinstatement to his former position on the police force of the city of Champaign was refused on the ground that one may be reinstated only to a legally existent office. Since the office of patrolman (like that of chief of police or captain of police) was unknown at common law, and there had been no ordinance passed creating it, the relator was precluded from gaining relief. While *Moon* provides an early interpretation of the Fire and Police Commissioners Act, subsequent statutory amendments have rendered this decision immaterial. In 1937 the Act was changed so that any full-time member of a regular police department at the time a municipality adopts it becomes a city officer. (See Ill. Rev. Stat. 1937, ch. 24, par. 854. This provision has been carried forward to Ill. Rev. Stat. 1967, ch. 24, par. 10—2.1—4.) The 1937 amendments were fully discussed by our Supreme Court in *People ex rel. Siegal v. Rogers*, 397 Ill. 187, 73 N.E.2d 316. In that case an improperly appointed patrolman claiming he was wrongfully dismissed from the police force requested a writ of mandamus to be issued compelling his reinstatement. The court held that the rule of *Moon v. The Mayor* was no longer applicable in cases brought under the Fire and Police Commissioners Act. It stated that the statute:

"* * * now provides that all officers and members of the police department who have held their positions for more than one year prior to the adoption of the act are city officers and shall be entitled to the protection of the section. The act describes a member of the police department as holding a 'position' and not an 'office.' This is not without significance, because a municipal position need not be created by formal ordinance but may be established by contract express or implied, and because an appropriation ordinance accompanied by performance of the duties of the position is sufficient to establish the existence of a position. (*People ex rel. Jacobs v. Coffin*, 282 Ill. 599.)" *People ex rel. Siegal v. Rogers*, 397 Ill. 187, 193, 73 N.E.2d 316.

■■ When the Village of Thornton adopted the Fire and Police Commissioners Act, Rogers had been the controlling law on this matter for over 20 years. Thus it cannot be contended that plaintiff, who had held a position on the police force for almost two years prior to the adoption of the Act, may be denied its benefits and protection. Pursuant to the explicit terms of the statute, plaintiff was "blanketed into" the classified service of the police department of Thornton. It appears as though the Board of Fire and Police Commissioners of the Village affirmed plaintiff's status by issuing to him a commission card reciting his appointment

on June 1, 1967, as chief of police with the rank of captain. It is clear, therefore, that the board was required to file written charges against plaintiff and offer him an opportunity to be heard in his own defense before he could be dismissed.

■■ The *Rogers* holding applies as well to defendants' assertion that plaintiff is not entitled to revert back to the rank of captain on the grounds that this office was never validly created and that, therefore, any appointment of plaintiff to this rank was improper. *Rogers,* and the statutory amendments it interprets, make the holding of a municipal position not a municipal office, the relevant concept in discussing a claim brought under the Act. It is a reversion to his previous *position* that plaintiff requests in his pleadings. Since "* * * one may lawfully hold a municipal position by virtue of a colorable appointment coupled with the performance of the duties of the position and remuneration therefor under applicable appropriation ordinances" (*Rogers* at 195), (and plaintiff assuredly meets these qualifications), he is entitled to revert to the rank of captain upon his reinstatement on the police department.[2]

Defendants assert that the *Rogers* rule was overturned by later amendments to the Act. These amendments state in pertinent part that "[t]he provisions of this Division shall apply only to full-time firemen and full-time policemen of a regularly constituted fire or police department and not to any other personnel of any kind or description." (Ill. Rev. Stat. 1967, ch. 24, par. 10—2.1—26.) It is defendants' belief that the interpretation given these amendments in *People ex rel. Gasparas v. Village of Justice,* 88 Ill.App.2d 227, 231 N.E.2d 669, effectively precludes the granting of relief to plaintiff. Defendants are mistaken in their belief. In *Gasparas* we merely held that part-time special policemen were not entitled to the coverage of the blanketing-in provisions of the Act. The record in the case at bar makes abundantly clear the fact that in serving the Village of Thornton plaintiff held a full-time position. Indeed, the *Gasparas* holding cited *Rogers* in support of the proposition that had plaintiffs in that case been full-time employees of the Village of Justice, their suit would have succeeded. In further support of his argument plaintiff has cited *People ex rel. Kwiat v. Board of Fire and Police Comm'rs,* 14 Ill.App.3d 45, which concerned the question of whether the passage of an appropriation ordinance was sufficient to establish the

---

[2] Defendants have also claimed that plaintiff may not be reinstated as captain of police because he did not serve in this position for a period of one year. Contrary to defendants' belief, the statutory provision dealing with reversions in rank of chiefs of police does not carry any durational requirement with regard to the occupation of the lower rank by those persons who seek such reversions. Ill. Rev. Stat. 1967, ch. 24, par. 10—2.1—4.

office of fire lieutenant. Although the plaintiff in that case was denied relief on this issue, it was held "* * * if the plaintiff had been appointed a lieutenant in the first department and had undertaken and performed the duties of that rank, those circumstances coupled with the appropriation ordinances would, under *Jacobs* and *Rogers,* be sufficient to establish the office of lieutenant and give him protection in that rank." (*Kwiat,* at 50.) The evidence adduced in the case at bar clearly demonstrates that plaintiff met these prerequisites.

It being clear that plaintiff has shown a right to the issuance of the writ of mandamus, the decision of the circuit court is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.