Joel A. Kagann, Plaintiff-Appellant, *v.* The Board of Fire and Police Commissioners of the Village of Woodridge, *et al.,* Defendants-Appellees.

(No. 73-206; ▮▮▮▮▮▮▮

Second District (1st Division)—April 28, 1975.

*Rehearing denied June 4, 1975.*

Richard F. McPartlin, of Chicago, and William E. Corrigan, of Wheaton, for appellant.

Alfred P. Bianucci, of Chicago, for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Plaintiff appeals from a declaratory judgment which adjudged that he was not entitled to "revert to, and be established in" the rank of captain in the Police Department of the Village of Woodridge (as plaintiff had requested in his letter dated November 19, 1971, resigning as chief of police), and dismissed plaintiff's suit with prejudice. The trial court decided this case upon the complaint, the answer thereto and upon a stipulation of facts between the parties. Thus, the facts are not controverted.

On July 1, 1962, plaintiff was duly appointed chief of police of the Village by its corporate authorities and continued to perform his duties as chief until November 19, 1971. In the years 1963 and 1965 and June

.of 1967, he entered into written employment contracts covering his services as police chief. The 1967 contract specified, among other things, that he was entitled to vacation and "all of the benefits as set forth * * * under the category of Captain in Ordinance # 67-8." That ordinance established "the salaries and benefits for" Village police officers, which included hospitalization and accident insurance, life insurance, pension, holidays and uniform allowance.

In the meantime on September 16, 1965, the corporate authorities passed a resolution which "conferred upon" plaintiff "the rank of Captain of the Police Department," after reciting that they had "first established the rank of Captain of Police" of the Village, and referring to plaintiff's services as its chief of police for several years, and their desire to confer upon him the rank of captain. It should be noted that Ordinance # 63-1, adopted in January, 1963 (which amended the "composition" section of an earlier ordinance, # 59-20, "establishing a police department for the Village") provided that the police department "shall consist of the Chief of Police and such Captains [etc.] as may, from time to time, be appointed as by Statute and Ordinance provided."

On March 21, 1966, the Village, having attained a population of [over] 5,000, became subject to division 2.1 of article 10 of the Illinois Municipal Code as added by Act approved August 10, 1965 (Ill. Rev. Stat. 1965, ch. 24, par. 10—2.1—1 *et seq.*). On May 19, 1966, they passed Ordinance # 66-5 creating a Board of Fire and Police Commissioners for the Village ("Commissioners") and granting to it the powers conferred under section 10—2.1—4 of the Municipal Code, but retaining for the mayor, subject to the advice and consent of the Board of Trustees of the Village, the power to appoint the chiefs of the Fire and Police Departments.

At their meeting on June 15, 1966, the commissioners adopted a motion that the plaintiff "be classified as permanent rank of Captain of Police in accordance with Chapter 24, Section 10—2.1—7 of Illinois Statutes." The minutes of their June 20 meeting set forth that a "letter was written to the Mayor * * * dated June 14 [*sic*], 1966, approving the classification of [two identified patrolmen] and Captain Joel Kagann as permanent ranks." At that same meeting they unanimously adopted a motion that plaintiff "be considered on furlough from the rank Captain [*sic*] while serving as Chief of Woodridge Police Department." By letter dated June 20, 1966, addressed to "Captain Kagann," signed by all the commissioners, they informed him of the adoption of the motion "to consider you on furlough from the rank of Captain of Police while you are holding the position of Chief of Police." The commissioners also issued to plaintiff an "Official Com-

mission," dated June 14, 1966, declaring that he was "classified to the office of Permanent Rank of Police Captain." On October 22, 1967, they issued to plaintiff a wallet-sized card also captioned "Official Commission," identifying plaintiff as having been "appointed to the office of Permanent Rank of Captain * * * on September 16, 1965"; on the reverse side of the card appeared his name, his title: "Captain of Police," his star number: 2, date of appointment: September 16, 1965, other descriptive identification data (such as his sex, height, weight, color of hair and eyes), and a line for the signature of the holder, Joel E. Kagann.

In November, 1968, Ordinance # 59-20 (which had been amended by Ordinance # 63-1, above referred to) was further amended by Ordinance # 68-28 to read as follows:

> "There is hereby created a Police Department which shall consist of the Chief of Police; one Captain of Police, one Sergeant of Police; seven Patrolman [sic] of Police".

There were other amendments from time to time of Ordinance # 59-20, further increasing the number of patrolmen or adding sergeants and lieutenants, or both.

On November 19, 1971, plaintiff tendered his resignation as chief of police in a letter addressed to the mayor of the Village, the last paragraph of which reads as follows:

> "With this resignation, I hereby notify the Mayor and Board and the Board of Fire and Police Commissioners of my intention in accordance with section 10—2.1—4 of Chapter 24, Illinois Revised Statutes, to revert to my classified rank of Captain of Police effective immediately."

On the same day the Mayor in writing accepted the resignation, thanked plaintiff for his "many years of service and cooperation [sic]," and added the following:

> "In reference to your request to revert to the rank of Captain of Police, effective immediately, is denied. You of course have a route of appeal if you so desire."

A few days later, on November 22, plaintiff reported to the acting chief of police of the Village requesting that he be "established in the Rank of Captain," and that request being denied, he made a written demand on November 30, 1971, on the commissioners and the village administrator (and acting police chief) that he "be established in his rank of Captain of Police," and paid the salary provided for that rank ($1399 per month), beginning November 22, 1971. That demand was likewise denied.

During his tenure plaintiff received the salary annually appropriated

by the Village for "Police Chief." There were also annual appropriations for salaries of "Police Officers" in bulk amounts. Section one of Ordinance # 67—8 adopted on June 1, 1967, referred to in the 1967 employment contract between plaintiff and the Village, set forth a table of monthly salaries for various ranks of police officers, including captain, in nine classes of tenure of service. The monthly salaries set forth for captain of police ranged from $730 for the first 6 months of service (Class 1)· to $859 for 15 years of service or more (Class 9). Section two thereof established the table for fringe bnefits for each rank including captain. By Ordinance # 71-10, adopted in September, 1971, Ordinance # 67-8 and subsequent ordinances dealing with salaries and benefits of police officers were further amended by establishing the monthly salary for captain to range from $1113 (Class 1) to $1543 (Class 10—covering 9 to 10 years tenure); for Class 8, covering 5 to 7 years of service, the captain's monthly salary was set at $1399.

Immediately prior to November 19, 1971, the date of plaintiff's resignation as police chief and of his request to "revert to" the rank of police captain, plaintiff's monthly salary as chief of police was $1345, and he was a member of and had been contributing to, the police pension fund.

As stated by the trial court, in its opinion, the question presented is "whether  *  *  *  plaintiff is entitled to the classified rank of Captain in the Police Department of the Village  *  *  *." The trial court concluded that plaintiff failed to prove that he was entitled to that rank because "[t]he statutory requirements for the creation of [that] rank  *  *  *  and the appointment thereto of plaintiff  *  *  *" had "never been accomplished in the manner prescribed by law  *  *  *." The court's reasoning was: (1) no "ordinance" was adopted by the corporate authorities of the Village establishing the office of Captain of Police, and (2) plaintiff "never performed any services" in the rank of Captain, "or drew pay for performing duties" of that rank.

Plaintiff contends that (1) the actions of the corporate authorities of the Village and of the commissioners were sufficient to create the office of police captain and to entitle plaintiff to revert to that office upon his resignation as chief of police, and (2) the defendants are estopped by their actions from claiming that plaintiff is not entitled to reinstatement as a member of the Police Department and to "his rank of Captain."

There can be no question here but that the Village did adopt an ordinance (# 63-1) in January, 1963, whose composition section created or provided for the office of captain of police. Moreover, it is abundantly clear from the record that by their formal resolution in September, 1965,

the corporate authorities had in mind that office or rank of "Captain of Police" which they had earlier "established," when they determined to and did confer upon plaintiff the rank of captain of police.

After the Village came under the provisions of the Fire and Commissioners Act and created in May, 1966, the Board of Fire and Police Commissioners, the commissioners, less than a month later, "classified" plaintiff in the "Permanent Rank of Captain of Police in accordance with * * * Section 10—2.1—7" of the Fire and Police Commissioners Act (Ill. Rev. Stat. 1965, ch. 24, par. 10—2.1—7), and considered him "on furlough from" that rank "while serving as Chief of * * * Police * * *." They notified the mayor of the Village of their action and issued an "Official Commission" to plaintiff in his "Permanent Rank of Captain." It should be noted that at no time in the intervening 6½ years did the corporate authorities or the Commissioners ever repeal or repudiate any of those actions until their refusal in November, 1971, when plaintiff requested and asked for but was refused acknowledgment and reinstatement to "his" rank of captain of police concurrent with his resignation as chief of police.

Indeed, in the intervening years the corporate authorities repeatedly adopted, by ordinance, amendments to its "composition" ordinance which acknowledged the existence of the rank of captain of police. In the 1967 employment contract between the plaintiff and the Village they provided for plaintiff's entitlement to the vacation and other fringe benefits set forth "under the category of Captain" in an earlier 1967 ordinance. Also, in the intervening years the commissioners in October, 1967, after the 1967 contract was entered into with plaintiff issued to him another "Official Commission" certifying to his classification to the office of captain of police. That commission acknowledged that prior thereto, namely in September, 1965, plaintiff had been appointed to the "permanent" rank. The earlier commission issued by the commissioners in June of 1966 also acknowledged and confirmed plaintiff's appointments to the prior rank of captain of police and of his "furlough" status from that rank while he was serving as chief of police.

It is obvious that the actions of the corporate authorities in September, 1965, as well as those of the commissioners in June, 1966, and October, 1967, were intended to establish plaintiff in the prior "Permanent Rank" of police captain so as to provide him with the protection afforded by the provisions of Division 2.1 of Article 10 of the Illinois Municipal Code.

Section 10—2.1—4 of that Code (Ill. Rev. Stat. 1969, ch. 24, par. 10—2.1—4) provides in part as follows:

"The board of fire and police commissioners shall appoint all

officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department \* \* \*.

If a member of the department is appointed Chief of Police \* \* \* prior to being eligible to retire on pension he shall be considered as on furlough from the rank he held immediately prior to his appointment as chief. If he resigns as Chief \* \* \* prior to attaining eligibility to retire on pension, he shall revert to and be established in such prior rank, and thereafter be entitled to all the benefits and emoluments of such prior rank, without regard as to whether a vacancy then exists in such rank."

Plaintiff was a "member" of the Village's police department at least from September, 1965, when the corporate authorities conferred upon him the rank of captain. In June, 1967, after the 1965 employment agreement as chief of police had expired the corporate authorities of the Village again "engaged" or appointed him as chief of police.

Defendants, however, contend that plaintiff is not entitled to revert to his "prior rank" under that section because (1) plaintiff's appointment as captain of police was not made by ordinance (and the September, 1965, resolution was therefore ineffective), (2) he never performed the duties of "Captain of Police," but only as "Police Chief", and (3) appropriation ordinances did not provide for the salary of police captain.

■■ Defendants argue that an ordinance was required to effectuate plaintiff's appointment as captain of police because Ordinance # 63—1 providing for the composition of the police department contemplated that such appointment would be done by "statute and ordinance." Our examination of the record does not reveal that there was any Village ordinance in 1965 when the rank of captain was conferred upon him which regulated the manner of appointment to ranks, positions or employments of any kind in the police department. The 1965 resolution of the Village did not amend or purport to amend Ordinance # 63—1, it merely implemented it. Moreover, there is no statute which requires the passage of an ordinance for the creation of a position or an employment by a municipality. *People ex rel. Jacobs v. Coffin*, 282 Ill. 599, 607; *People ex rel. Siegal v. Rogers*, 397 Ill. 187, 195; *People ex rel. Bubash v. Board of Fire & Police Commissioners*, 14 Ill.App.3d 1042, 1047.

It is true, as defendants point out, that Illinois authorities such as *Jacobs, Siegal* and *Bubash*, in construing the Fire and Police Commissioners Act, stated that performance of duties of the rank, coupled with an appropriation ordinance, were sufficient to establish the rank or office and protection in such rank. It should be noted that the statements in

those cases do not purport to name those factors as the sole or essential requisites for the existence of the position.

■■ Defendants in effect are arguing that if plaintiff had performed any duties as "Captain of Police" even for one day or for one hour, and received a salary as "Captain" for such services he would have fulfilled those requirements. Obviously, under the circumstances here such argument goes too far. When the Fire and Police Commissioners Act became effective as to the Village in March, 1966, and was adopted by the Village in May, plaintiff held the rank of captain of police. He also was serving as chief of police and held that rank, and was blanketed in under the Act as chief and also as a member of the Police Department. *Edwards v. City of Marion,* 130 Ill.App.2d 895.

Section 10—2.1—4 of the Fire and Police Commissioners Act, as amended in 1965, authorizing the chief of police of a municipality to revert to and be established in his prior rank, recognizes the concept of duality of employment which the corporate authorities had in mind when they conferred upon plaintiff the rank of captain by the 1965 resolution.

The mere fact that appropriation ordinances of the Village did not specifically provide for a salary to "Police Captain" is of no moment. Since plaintiff was also chief of police he was being remunerated therefor pursuant to appropriation ordinances. There was therefore no need to provide for a specific appropriation to pay plaintiff as captain of police, particularly in view of the fact that the appropriation ordinances always provided for a bulk sum appropriation for "police officers."

In view of our holding we refrain from considering plaintiff's persuasive argument that the defendants are estopped from claiming that plaintiff is not entitled to reinstatement as a member of the Police Department and to his rank of captain.

■■ Therefore, judgment is reversed and the cause is remanded with instructions to find for the plaintiff.

Reversed and remanded with directions.

T. MORAN and DIXON, JJ., concur.