RONALD SINNOCK, Plaintiff-Appellant, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF BEARDSTOWN *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0624

Opinion filed March 29, 1985.

Homer J. Tice, of Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellant.

No brief filed for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiff, Ronald Sinnock, brought suit to recover lost wages after the defendants, the board of fire and police commissioners and

the city of Beardstown, laid him off from their police force. The trial court held Sinnock's furlough prior to an ordinance officially reducing the size of the force was wrongful. The court granted summary judgment in favor of Sinnock for the period of time before the official reduction. The court, however, refused to award him any wages for the period after the date of the ordinance and granted summary judgment in the defendants' favor for that period of time. Sinnock appeals, contending his furlough after the ordinance was still wrongful because he had more seniority than an officer who was retained. In addition, Sinnock maintains the trial court erred in not awarding him prejudgment interest on the wages that he was awarded.

The defendants failed to file a brief on appeal. While a court of review should not be compelled to serve as an advocate for the appellee, a considered judgment of the trial court should not be set aside without some consideration of the merits of the appeal. Therefore, if the record is simple and the claimed errors are such that the court can easily decide them without the aid of the appellee's brief, the court should decide the merits of the appeal. On the other hand, if the appellant's brief demonstrates *prima facie* reversible error and the contentions in the brief find support in the record, then the trial court's judgment may be reversed. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

On June 28, 1978, the city appointed patrolman Michael Dyer as chief of police. Sinnock was hired on August 10, 1979. Dyer resigned as chief on May 16, 1981, and resumed his duties as a patrolman. The city decided that with Dyer's return to the position of patrolman it had more patrolmen than it needed. The city, therefore, laid off Sinnock on May 16 because he had been the last officer hired. On May 16, 1981, the ordinances of the city provided for seven patrolmen. Ordinance No. 81—11, adopted July 21, 1981, set the number of patrolmen positions at six. The trial court held the city had wrongfully furloughed Sinnock without officially reducing the size of its force. (See Ill. Rev. Stat. 1983, ch. 24, pars. 10—2.1—17, 10—2.1—18.) The trial court awarded Sinnock lost wages for the period of time between May 16 and July 21. The city has not appealed that award.

■ Sinnock argues that his continued furlough after passage of the ordinance was also wrongful. Section 10—2.1—18 of the Illinois Municipal Code states, in pertinent part:

> "When the force of the fire department or of the police department is reduced, and positions displaced or abolished, seniority shall prevail and the officers and members so reduced in rank,

or removed from the service of the fire department or of the police department shall be considered furloughed without pay." (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—18.)

Sinnock maintains he had more seniority in the rank of patrolman than Dyer, and, therefore, Dyer should have been furloughed.

Sinnock maintains that "seniority" refers to seniority in rank rather than seniority in service. He relies on the following statement from the supreme court's decision in *Yeley v. Bartonville Fire & Police Com.* (1979), 77 Ill. 2d 271, 274, 395 N.E.2d 1387, 1389:

"We agree with the appellate court that section 10—2.1—18 is correctly construed to apply to seniority in rank and not in length of service with the department."

*Yeley*, however, presented a much different case factually than the present one. The plaintiff in *Yeley* had been one of three sergeants on the Bartonville police force. When the village board decided to reduce the number of sergeants to two, the plaintiff was demoted. While he had been on the force longer than the other sergeants, he had not held the rank of sergeant as long. The appellate court in *Yeley* decided the Illinois Municipal Code strove to promote efficiency and capability of fire and police departments and to encourage the application and retention of qualified persons. That court concluded:

"A careful reading of the section [10—2.1—18] indicates that it has two functions. It requires that, if the manpower of the department is reduced, such reduction is to be effected according to seniority on the department, regardless of rank. If however, positions within a rank are reduced, then such a reduction in any given rank is to be effected according to seniority within that rank." (*Yeley v. Bartonville Fire & Police Com.* (1978), 64 Ill. App. 3d 448, 451, 380 N.E.2d 1387, 1390, *rev'd on other grounds* (1979), 77 Ill. 2d 271, 395 N.E.2d 1387.)

The court held that requiring the demotion of a more qualified and more experienced sergeant would defeat the statute's purpose. Similarly, in this case, to require the furlough of a more experienced and more qualified officer would not promote the efficiency and capability within the department and would discourage the application, retention and promotion of qualified persons. As stated in *Yeley v. Bartonville Fire & Police Com.* (1978), 64 Ill. App. 3d 448, 450, 380 N.E.2d 1387, 1389, the word "seniority" is defined as:

" '[A] status attained by length of continuous service (as in a company, institution, or organization or in a department, job, rank or occupational group) to which are attached by custom or prior collective agreement various rights or privileges (as pref-

erence in tenure, priority in promotion, and choice of work or shift) on the basis of ranking relative to others \*\*\*.' (Webster's Third New International Dictionary 2066 (1961).)"

Section 10—2.1—4 of the Illinois Municipal Code provides, in part:

"If a member of the department is appointed Chief of Police or Chief of the Fire Department prior to being eligible to retire on pension he shall be considered as on furlough from the rank he held immediately prior to his appointment as Chief. If he resigns as Chief or is discharged as Chief prior to attaining eligibility to retire on pension, he shall revert to and be established in such prior rank, and thereafter be entitled to all the benefits and emoluments of such prior rank, without regard as to whether a vacancy then exists in such rank." (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—4.)

It is important to note rules of statutory construction. As stated by the appellate court in *Yeley v. Bartonville Fire & Police Com.* (1978), 64 Ill. App. 3d 448, 450-51, 380 N.E.2d 1387, 1389-90:

"In construing statutes, the reviewing courts should consider 'the reason or necessity for the enactment, the contemporaneous conditions, existing circumstances, and the object sought to be obtained by the statute.' [Citation.] In addition, when attempting to determine legislative intent 'sections of the same statute should be construed as being consistent rather than inconsistent and should be interpreted as being *in pari materia.*' [Citation.] Furthermore, statutes ought to be construed so that their meaning is reasonable and so that the interpretation of them does not lead to absurd consequences. [Citation.]

The purpose of requiring a board of police and fire commissioners and civil service appointments of policemen and firemen is to promote the efficiency and capability of fire and police departments and to encourage the application and retention of qualified persons. [Citation.] We can not interpret this section so as to defeat the purpose of the entire statute."

Section 10—2.1—4 mandates that a resigning chief of police prior to attaining eligibility to retire be entitled to all the benefit of the prior rank without regard to whether a vacancy then exists.

■■ To give effect to this section the time spent as chief of police must be included in determining seniority. The purpose of the statute would be completely avoided to apply any other meaning. There would be no protection to a person offered the job of chief of police from within the ranks. The protection provided by the statute would be effectively thwarted. While the chief is to be considered as on fur-

lough from the rank he held immediately prior to this appointment, nothing in section 10—2.1—4 indicates that his seniority in rank is affected by his appointment. Instead, the statutes recognized the concept of duality of employment. (*Kagann v. Board of Fire & Police Commissioners* (1975), 28 Ill. App. 3d 209, 215, 328 N.E.2d 364, 368.) As previously stated, no vacancy occurs in the rank when an officer is appointed chief. The chief continues to be a member or officer of the department. (*Edwards v. City of Marion* (1970), 130 Ill. App. 2d 895, 266 N.E.2d 491.) Furthermore, an officer can be promoted in rank while holding the office of chief. (See *Barrows v. City of North Chicago* (1975), 32 Ill. App. 3d 960, 336 N.E.2d 596.) We conclude that an officer continues to accumulate seniority in his rank while serving as chief.

Even if Sinnock is correct in his interpretation of "seniority," we agree with the trial court that he had less seniority in the rank of patrolman than Dyer. Including the period for which he was wrongfully furloughed, Sinnock accumulated 711 days of seniority as a patrolman. Dyer served as a patrolman for 644 days before he became acting chief on May 8, 1978. Between May 8 and May 16, 1978, he performed the duties of the chief but only received a patrolman's salary. After May 16, he began receiving the chief's pay and was officially appointed chief on June 20, 1978. Between the date he resigned as chief and the date of the ordinance, Dyer served an additional 66 days as a patrolman. In calculating Dyer's seniority, the trial court included the eight days that Dyer served as acting chief while receiving a patrolman's salary, giving him a total of 718 days.

Sinnock argues Dyer ceased being a patrolman once he began performing the duties of acting chief. He maintains the trial court erred in adding the eight days to Dyer's seniority. Sinnock relies on *People ex rel. Bubash v. Board of Fire & Police Commissioners* (1973), 14 Ill. App. 3d 1042, 303 N.E.2d 776. *Bubash*, however, stands for the proposition that performance of the duties of a rank or office, coupled with remuneration under an appropriation ordinance, is sufficient to establish the rank or office and protection in such rank. (*Kagann v. Board of Fire & Police Commissioners* (1975), 28 Ill. App. 3d 209, 214, 328 N.E.2d 364, 368.) None of the city's ordinances included an appropriation for the position of acting chief. While the ordinances did include the position of chief, Dyer was not remunerated under those ordinances until after May 16, 1978.

■ Sinnock also asserts the trial court erred in denying him prejudgment interest on the wages that he was awarded. Section 2 of the Interest Act provides:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instruments of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." (Ill. Rev. Stat. 1983, ch. 17, par. 6402.)

This case does not involve an instrument in writing or any other situation described in section 2. There has been no allegation of any vexatious or unreasonable delay. Neither an honest dispute concerning the existence of a legal obligation nor the defense of a lawsuit can be regarded as vexatious and unreasonable. Moreover, decisions regarding an award of prejudgment interest involve questions of fact and will not be disturbed on review unless contrary to the manifest weight of the evidence. (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 557-58, 437 N.E.2d 872, 883.) The trial court's decision was not against the manifest weight of the evidence.

For these reasons, the judgment of the trial court is affirmed.

Affirmed.

GREEN, P.J., and WEBBER, J., concur.