JOHN RINCHICH, Plaintiff-Appellant, v. THE VILLAGE OF BRIDGE-VIEW *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—90—2378

Opinion filed Septmber 22, 1992.

Richard H. Kane & Associates, Ltd., of Naperville (Richard H. Kane, of counsel), for appellant.

Ancel, Glink, Diamond & Cope, P.C., of Chicago (Steven E. Glink and Marvin J. Glink, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

On September 7, 1989, plaintiff John Rinchich filed suit against the Village of Bridgeview (the Village), its president and chief executive officer and its board of trustees (collectively, defendants). In his amended complaint Rinchich alleged the following facts to be common to all counts: (1) that "[o]n March 28, 1979, [he] was appointed by the Board of Fire and Police Commissioners to the position of Fire Prevention Education and Training Officer[ ]"; (2) that on May 8, 1989, the Village and its board of trustees enacted ordinance No. 89—9, which set the salary for officials and employees of the Village and that on July 24, 1989, the Village enacted ordinance No. 89—27, which "eliminated the salary of Ordinance Officer which under the annual salary ordinance was $7,597.28" and "[e]liminated the salary of Fire Prevention and Education Training Officer which under the annual salary ordinance (Ordinance No. 89—9) was $27,761.05"; and (3) that defendants' actions "in abolishing [his] position as Fire Prevention Training and Education Officer" violated division 2.1 of article 10 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—1), which vests the board of police and fire commissioners with the authority to regulate the employment of firefighters, and contravened section 3—13—1 of the Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—13—1), which provides that the salaries of municipal officers may not be diminished so as to take effect during the term of their appointment.

Count I of his complaint sought judgment declaring (1) that ordinance No. 89—27 is void; (2) that any salary decreases and eliminations pursuant to that ordinance are unlawful; (3) that his position as fire prevention and training officer was illegally abolished; and (4) that he was entitled to be reinstated immediately as fire prevention and training officer.

Count II of his complaint sought to enjoin defendants from taking action under ordinance No. 89—27 on the ground that it deprived him

of his position as fire prevention training and education officer without due process of law.

In count III, Rinchich alleged (1) that he began working as a volunteer firefighter in March of 1963, and subsequently attained the rank of captain in the volunteer fire department; (2) that in 1971, the Village, by virtue of its having exceeded 5,000 population, became subject to the provisions of the Illinois Municipal Code and that pursuant thereto he became a full-time firefighter with the Village, with the rank of lieutenant, and that he was compensated as a lieutenant; (3) that although he resigned in 1973, he was reappointed as a lieutenant when he returned in August of 1977; (4) that from August 1, 1977, to March of 1979, he served as a lieutenant; (5) that he was appointed by the board of police and fire commissioners to the position of fire prevention training and education officer in March of 1979, and served in both that position and as lieutenant in the Village's fire department until August of 1989; (6) that he "was compensated from March 1979, to April, 1977 [sic], as a Lieutenant *** and thereafter as a Fire Prevention Training and Education Officer"; (7) that in October of 1983 Chief Billig advised defendant Oremus of his qualifications "as both a Training and Education Officer and Lieutenant"; (8) that in April of 1977 the Village advised him he would no longer be permitted to attend collective bargaining sessions because it was its opinion that he was "not a valid officer of the Village," and that he was subsequently denied further compensation as a lieutenant; (9) that the Village enacted ordinance No. 89—27, which eliminated his salary and position as fire prevention training and education officer, and that the Village advised him to report as a firefighter rather than lieutenant; (10) that he had never received any complaints relative to his service and had never been charged by the board of fire and police commissioners with any wrongful acts; (11) that he had been denied the opportunity to participate in collective bargaining negotiations with the Village and deprived of the salary of a lieutenant by the actions of the Village notwithstanding the fact that he had served as a lieutenant and as fire prevention training and education officer; and he concluded with the charge that (12) defendants' actions were motivated in part by their desire to punish him for his political activities.

Therefore, count III sought judgment declaring (1) that he was entitled to hold the rank of lieutenant; (2) that he was entitled to the compensation due a lieutenant; (3) that his position as fire prevention training and education officer was illegally abolished; and (4) that he "should be immediately reinstated to Lieutenant and Fire Prevention Training and Education Officer."

On March 16, 1990, defendants filed a motion for summary judgment in which they argued that (1) because upon his return in 1977 Rinchich did not meet the statutory requirements for becoming a firefighter he was hired as a civilian employee, and that inasmuch as he was not a firefighter he could not be a lieutenant; (2) that the position of fire prevention training and education officer was created by the Village, which retained the power to abolish it; (3) that Rinchich provided no evidence that he was duly appointed to the rank of lieutenant; and (4) that they did not violate Rinchich's civil rights because he had no constitutionally protected right to retain the position of fire prevention training and education officer. They point out that Rinchich has alleged a due process violation only in regard to the position of fire prevention training and education officer. Finally, defendants argued that the Village had no duty to engage in collective bargaining with Rinchich.

At the May 21, 1990, summary judgment hearing, the circuit court struck certain affidavits submitted by Rinchich in opposition to defendants' motion; allowed him, pursuant to his request, time to file amended affidavits; and continued the matter until July 16, 1990. However, he filed no additional affidavits. At the July 16, 1990, summary judgment hearing, the court granted the defendants' motion for summary judgment and made its order final. Specifically, the court found that Rinchich's statement of facts was not supported by the record; that he was not a municipal officer; that he was not entitled to the rank of lieutenant because he did not fulfill the legal requirements of the position; that he was not eligible to be appointed as a firefighter in 1977; and that he failed to raise any genuine issue of material fact pertaining to the allegations that defendants' actions were politically motivated. Rinchich appeals.

I

Rinchich's first contention is that the trial court erred in granting defendants' motion to strike certain affidavits submitted by him in response to defendants' motion for summary judgment.

■■ Although the parties have not raised the issue, we have the duty to inquire into our jurisdiction and to dismiss an appeal if we determine that it is wanting. (*Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 539.) Supreme Court Rule 303(c)(2) (134 Ill. 2d R. 303(c)(2)) provides that the notice of appeal shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court. (134 Ill. 2d R. 303(c)(2).) We note further that the no-

tice of appeal is to be liberally construed. *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433.

In this case, the notice of appeal states:

"Plaintiff-Appellant, John Rinchich *** appeals *** from an Order of the Circuit Court of Cook County, Illinois, County Department, Chancery Division, dated July 16, 1990, granting Summary Judgment to the Defendant [*sic*] and against Plaintiff as to Plaintiff's Complaint and Defendant's [*sic*] Counter-claim. *** By this Appeal, Plaintiff-Appellant respectfully suggests that the Trial Court erred in granting Defendant's [*sic*] Motion for Summary Judgment as to Plaintiff-Appellant's Complaint and as to Defendant-Appellee's [*sic*] Counter-claim, and Plaintiff-Appellant will ask the Appellate Court to vacate the Trial Court's Order of July 16, 1990; to reverse the Trial Court's Order granting Summary Judgment to the Defendant [*sic*]; to remand this cause to the Circuit Court for further proceedings ***."

However, as noted above, the order striking the affidavits was entered on May 21, 1990.

In *Burtell* (76 Ill. 2d at 434-35), the court stated:

"When an appeal is taken from a specified judgment only, or from a part of a specified judgment, the court of review acquires no jurisdiction to review other judgments or parts thereof not so specified or not fairly to be inferred from the notice as intended to be presented for review on the appeal. If from the notice of appeal itself and the subsequent proceedings it appears that the appeal was intended, and the appellant and the appellee so understood, to have been taken from an unspecified judgment or part thereof, the notice of appeal may be construed as bringing up for review the unspecified part of the order or judgment. Such a construction would be appropriate where the specified order directly relates back to the judgment or order sought to be reviewed. *** [T]he unspecified judgment is reviewable if it is a 'step in the procedural progression leading' to the judgment specified in the notice of appeal. [Citation.]"

In *Jewel Cos. v. Serfecz* (1991), 220 Ill. App. 3d 543, the defendants specified the court's order granting summary judgment in their notice of appeal, but did not specify its earlier order finding a lease provision ambiguous. The court reasoned that the earlier order was a step in the procedural progression leading to summary judgment; and it therefore reviewed both orders. (*Jewel Cos.*, 220 Ill. App. 3d at

548.) Similarly, in *Smock v. Hale* (1990), 197 Ill. App. 3d 732, *appeal denied* (1990), 133 Ill. 2d 573, the plaintiff specified the court's order granting summary judgment in her notice of appeal, but did not specify its earlier orders disqualifying her medical expert and closing discovery. Because it found that the two orders contributed directly to the entry of summary judgment, the appellate court reviewed all of the orders. *Smock*, 197 Ill. App. 3d at 738.

In this case, we find that the court's order striking the affidavits was a step in the procedural progression leading to summary judgment; we shall therefore review it on appeal.

Nevertheless, defendants maintain on the authority of *Continental Building Corp. v. Union Oil Co.* (1987), 152 Ill. App. 3d 513, *appeal denied* (1987), 116 Ill. 2d 550, and *Oak Trust & Savings Bank v. Annerino* (1978), 64 Ill. App. 3d 1030, that Rinchich "has waived an assignment of error due to the trial court's order striking the affidavits because [he] elected to stand on his own affidavit." We note that because he did not file a reply brief, Rinchich has not responded to defendants' waiver argument. In *Continental*, the appellate court granted Union Oil's motion to strike Continental's prayer to amend its complaint "because Continental failed to request such relief at the trial level." (*Continental*, 152 Ill. App. 3d at 515.) In *Oak Trust* the court held that the defendant waived his objection to an affidavit because although he had moved to strike it, the record was devoid of any ruling by the court on the motion. According to the court, it is the movant's duty to bring his motion to the court's attention and to preserve the rulings thereon. *Oak Trust*, 64 Ill. App. 3d at 1032.

■ At the May 21, 1990, summary judgment proceeding, after hearing arguments from both sides as to whether certain affidavits submitted by Rinchich in response to defendants' motion for summary judgment should be stricken, the circuit court, as previously noted, struck them in their entirety; allowed Rinchich, pursuant to his request, time to file amended affidavits; and continued the matter until July 16, 1990. It is clear from a review of the transcript of proceedings on July 16, 1990, that no additional affidavits were filed and that Rinchich elected to stand on his own affidavit, which had not been stricken. However, the following excerpt from the record indicates that Rinchich attempted to stand on the stricken affidavits as well:

> "MR. KANE: *** Now with respect to the other affidavits, this Court struck those affidavits and we did not file an amendment. I would like to read into the record—
>
> THE COURT: You said Mr. Rinchich's affidavit covered all of your arguments.

MR. KANE: That's correct. There's also the other affidavit of Russell Rakowski.

MR. STEVEN GLINK: Judge, those affidavits were—

THE COURT: Objection sustained.

MR. KANE: I want to address for the record our reasons for standing on those affidavits, because this matter—

THE COURT: You made that last time.

MR. KANE: Your Honor asked for additional matters that aren't covered by the briefs. I wanted to cite a couple of—

THE COURT: The record reflects no additional affidavits were filed. You made a statement that Rinchich's affidavit covers all of your arguments. Now, get to the point."

Accordingly, we hold that Rinchich did not waive this issue.

Among the affidavits submitted by Rinchich in response to defendants' motion for summary judgment were those of Christ Lammatos, Leo Perion and Andrew Russel, all of whom were former trustees of the Village of Bridgeview. Rinchich also submitted the affidavits of James Russell, a lieutenant in the Bridgeview fire department, and of John Rutkowski, a firefighter for the Bridgeview fire department. In reply, defendants argued that the affidavits of Lammatos, Perion and Andrew Russel were conclusory and therefore should be stricken. Similarly, defendants claimed that the affidavits of James Russell and Rutkowski should be stricken because they contained inadmissible hearsay evidence.

■ Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)) governs affidavits submitted in support of motions for summary judgment. (134 Ill. 2d R. 191(a).) In order to comply with Rule 191(a), "an affidavit must meet five requirements:

(1) it must be made on the personal knowledge of the affiant;

(2) it must consist of facts admissible in evidence;

(3) it must state relevant facts, not conclusions;

(4) it must have attached sworn or certified copies of all documents on which the affiant relies; and

(5) it must affirmatively show that the affiant, if sworn as a witness, can testify competently to its contents." (4 R. Michael, Illinois Practice §39.2, at 244 (1989).)

We note further that only the improper matter itself should be stricken from an affidavit. 4 R. Michael, Illinois Practice §39.2, at 246 (1989), citing *Murphy v. Urso* (1981), 88 Ill. 2d 444, 462-63.

The affidavit of Christ Lammatos provides:

"1. I served as a duly elected Trustee of the Village of Bridgeview from 1969 to 1981. During that period of time I

served as chairman of the Public Safety Committee which oversaw the Village Fire Department. As a consequence, I have personal knowledge of the facts set forth in this affidavit and know the same to be true and correct and if I were sworn to testify at trial, I would testify competently with respect to the matters contained herein.

2. During my tenure as Trustee, I helped formulate the ordinance creating a full time Fire Department in the Village of Bridgeview.

3. In 1971, the Village of Bridgeview created a full time Fire Department. At that time John Rinchich became a full time firefighter with the rank of Lieutenant, by virtue of his previous eight years of service as a volunteer firefighter for the Village with the rank of Captain.

4. In 1973, Plaintiff had a break in service as a lieutenant for the Village of Bridgeview, but resumed his duties as Lieutenant of the Village of Bridgeview Fire Department, with the full knowledge and approval of the Board of Trustees of the Village and the Board of Fire and Police Commission of the Village.

5. On February 16, 1977, Deputy Chief Don A. Billig had a break in service from the Bridgeview Fire Department but resumed his duties as firefighter with the rank of Deputy Chief in 1979. At the time Chief Billig resumed his duties, he was 39 years of age."

The affidavit of Leo Perion, who also served on the board of trustees from 1969 to 1981, is virtually identical to that of Lammatos except that Perion's indicates that in 1985 he "was appointed by the Mayor of the Village of Bridgeview to the Civil Service Commission of the Village." In addition, Perion's indicates that "John Rinchich was not carried on any roster of civilian employees of the Village, but rather, was at all times classified as a firefighter on all records of the Village of Bridgeview."

The affidavit of Andrew Russel, who served on the board of trustees from 1965 to 1981, is also nearly identical to those of Lammatos and Perion except that Russel's affidavit states that he "served as Chairman of the Public Safety Committee which oversaw the Fire Department of the Village."

■ Compliance with the requirement that an affidavit must affirmatively show that the affiant is qualified to testify at trial is to be determined from the contents of the affidavit itself, and an express statement to that effect is neither helpful nor required. (4 R. Michael,

Illinois Practice §39.2, at 247 (1989), citing *Purtill v. Hess* (1986), 111 Ill. 2d 229, 241.) Upon examining the contents of the affidavits, we find that the affiants are qualified to testify at trial. Contrary to defendants' argument, we do not find the affidavits to be conclusory. We note further that the circuit court denied defendants' motion to strike Rinchich's affidavit, which contains similar information stated in a like manner, and that the affidavit submitted by defendants is similar in quality and format. Therefore, we hold that the circuit court erred in striking the affidavits of Lammatos, Perion and Andrew Russel.

The affidavit of James Russell provides:

"1. I am a Lieutenant in the Bridgeview Fire Department, and personally know John Rinchich, having served with him in the Fire Department of the Village of Bridgeview for the last eighteen years. As a consequence, I have personal knowledge of the facts set forth in this Affidavit, and know the same to be true and correct both in substance and in fact, and if I were sworn to testify at the trial of this cause, I would testify competently with respect to the matters contained herein.

2. John Rinchich has served the Village of Bridgeview, as a member of its Fire Department, with the rank of Lieutenant, since 1971, and, after a break in service from 1973 to 1977, Lieutenant Rinchich resumed his position as Lieutenant in the Fire Department in September 1977.

3. Throughout my employment with the Bridgeview Fire Department, I have worked with Lieutenant Rinchich on numerous occasions, including working in the field *** in response to fire calls and other fire related emergency situations.

4. On several occasions, the management of the Bridgeview Fire Department has advised me, that it was their intention to fire Lieutenant Rinchich because of a lawsuit which [he] had filed against the corporate authorities of the Village of Bridgeview. Specifically, on March 29, 1989, I had a conversation with then Chief Martin Dooley of the Village of Bridgeview Fire Department, at Station House #3 in the Village of Bridgeview. During the course of that conversation, Chief Dooley told me that it was the intention of both [him] and the corporate authorities of the Village of Bridgeview to fire John Rinchich in retaliation for a lawsuit which Lieutenant Rinchich had brought against the Village of Bridgeview and its corporate authorities.

5. In 1979, Lieutenant Rinchich, in addition to his duties as lieutenant in the fire department, was duly appointed the Fire

Prevention Training and Education Officer by the Board of Fire and Police Commissioners of the Village of Bridgeview. Since 1979, and until late August 1989, Lieutenant Rinchich served as both Lieutenant, and Fire Prevention and Education Officer ***, discharging both the duties of the Lieutenant of the Fire Department, and that of Fire Prevention and Education Officer."

John Rutkowski's affidavit provides:

"1. I am a duly appointed firefighter for the Fire Department of the Village of Bridgeview and I have personal knowledge of the facts set forth in this affidavit and know the same to be true and correct, and if sworn to testify at trial, I would testify competently as to the matters contained herein.

2. On August 11, 1987, at approximately 10:00 a.m., I had a conversation with Martin Dooley, then Chief of the Village of Bridgeview and Lt. John Rinchich in the kitchen of the Fire Station No. 1 in the Village of Bridgeview.

3. In response to an inquiry from John Rinchich relative to a pay raise, Chief Dooley stated, in my presence that Rinchich would not receive a pay raise because the Village officials of the Village of Bridgeview hated him and that they were going to fire him the first chance they got.

4. In that same conversation, Chief Dooley stated to me that there was pressure being applied by the Village administration to get rid of both the affiant and Rinchich because we both belonged to the wrong political party and we did not play the game the way they wanted us to."

Defendants rely mainly on the authority of *Kalb v. Village of Oak Lawn* (1984), 128 Ill. App. 3d 481, in support of their position that these affidavits contain inadmissible hearsay and therefore were properly stricken by the trial court. In addition, they claim that Russell's affidavit contains multiple hearsay because he is testifying as to what Chief Dooley told him that the corporate authorities told the chief. The problem, defendants argue, is compounded by the fact that the statements are not attributed to any identifiable person who was a corporate authority and because the intent of one of the trustees could not be attributed to all of them or to the Village. In *Kalb*, the appellate court affirmed the trial court's ruling striking affidavits submitted by the plaintiff in opposition to defendants' motion for summary judgment because they related statements made by others to the affiant. *Kalb*, 128 Ill. App. 3d at 485.

Rinchich relies mainly on the authority of *Burgard v. Mascoutah Lumber Co.* (1955), 6 Ill. App. 2d 210, and *Gannon v. Daley* (N.D. Ill. 1983), 561 F. Supp. 1377, in support of his position that the statements were made by Chief Dooley, an agent of the Village, within the scope of his employment, and that therefore they constitute admissions. In *Burgard,* the court noted that "[t]here is a general rule that whatever is said by an agent, during the course of his duties and within the scope of his authority, relative to business contemplated by the agency in which he is then engaged is in legal intendment said by his principal and is admissible in evidence against such principal." (*Burgard,* 6 Ill. App. 2d at 215-16.) There, the court held that testimony concerning statements made by plaintiff's son at the time an accounting was being completed were admissible. (*Burgard,* 6 Ill. App. 2d at 215-16.) In *Gannon,* the plaintiff's testimony that the bureau chief for the State's Attorney told him that there was going to be a number of changes made because plaintiffs had supported or were members of an opposing political party was admissible. According to the court, it was undisputed that the bureau chief was defendant's agent and there was evidence indicating that his duties included making personnel recommendations. *Gannon,* 561 F. Supp. at 1381.

According to Cleary and Graham, "[r]elevant admissions of a party, whether consisting of a statement or conduct, are admissible when offered by the opponent as an exception to the Hearsay Rule." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802, at 594-95 (5th ed. 1990).) The authors state further:

"Whether a statement of an agent or servant concerning a matter within the scope of her employment, made during the existence of the relationship, is an admission of her employer has been decided at common law by applying the traditional agency test of whether the particular statement was authorized by the principal. Not surprisingly, courts generally decide that damaging statements were not within the scope of authority, even of relatively high level employees. ***

Obviously the difficulty with applying the strict agency principles is that agents or servants are very rarely authorized to make damaging statements. ***

This strict view, which requires authority to make the statement, is contrary to the general present trend in the direction of admitting the statement of the agent if made concerning matters within the scope of his employment. *** Federal Rule of Evidence 801(d)(2)(D) [citation] declares statements of an agent or servant concerning a matter within the scope of his

agency or employment to be admissions if made during the existence of the relationship. Authority to speak under the Federal Rule is no longer of concern; all that is required is that the statement concern a matter within the scope of the agency or employment and that the agent or servant still be employed at the time of making the statement." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.9, at 609-10 (5th ed. 1990).)

The authors note that although many Illinois cases represent the modern trend, the strict view continues to retain adherents. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.9, at 609-10 (5th ed. 1990).

■ We conclude that these statements were made by an agent concerning matters within the scope of employment during the existence of the employment relationship and that they are therefore admissible. We make note once more that the circuit court declined to strike Rinchich's affidavit which contained similar information stated in a similar format. Accordingly, we hold that the circuit court erred in striking these affidavits.

## II

■ Section 2—1005(c) of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—101 *et seq.*) authorizes the entering of summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) The appellate court reviews summary judgment orders *de novo* (*Quality Lighting, Inc. v. Benjamin* (1992), 227 Ill. App. 3d 880, 884), and it is to construe the pleadings, depositions, admissions, and affidavits in support of the motion strictly against the moving party and liberally in favor of the opponent. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358; *Purtill*, 111 Ill. 2d at 240.) Although the use of summary judgments is encouraged in order to aid in the prompt disposition of lawsuits, because it is a drastic means of disposing of litigation, it should be allowed only when the right of the moving party is clear and free from doubt. *Pyne*, 129 Ill. 2d at 358; *Purtill*, 111 Ill. 2d at 240.

## A

Rinchich argues that defendants, by eliminating his position as fire prevention training and education officer, violated section 3—13—

1 of the Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—13—1), which he claims "governs the establishment and fixing of salaries by the corporate authorities of all city officers and employees." Rinchich alleged that he was appointed to the position of fire prevention training and education officer in 1979. He contends that "[i]t is virtually undisputed, that [he] was characterized by the Village as its Fire Prevention Training Officer *** [and that he] was given full authority by the Village to discharge his duties with respect to that position." According to Rinchich, on May 8, 1989, the Village and its board of trustees enacted ordinance No. 89—9, which set the salary for the position of fire prevention and education training officer at $27,761.05. However, on July 24, 1989, the Village enacted ordinance number 89—27, which amended the earlier ordinance and eliminated the position of fire prevention and education training officer.

Contrary to Rinchich's position, defendants argue that section 3—13—1 regulates only the salaries of municipal officers and not the salaries of all municipal employees. They contend that Rinchich was, as the trial court ruled, "merely a civilian employee, who could be terminated at will in the discretion of the Village." Defendants assert that a municipality has the power to create and abolish an office or position. (*People ex rel. Jacobs v. Coffin* (1918), 282 Ill. 599.) On the other hand, defendants argue, a municipal officer is generally appointed to serve for a specified time, takes an oath of office and has supervisory and discretionary authority which an employee does not. (*Daniels v. City of Venice* (1987), 162 Ill. App. 3d 788, 790, citing *City of Rockford v. Industrial Comm'n* (1978), 69 Ill. 2d 597, 603-05.) Therefore, defendants argue that Rinchich does not fit within the definition of a municipal officer under section 3—13—1. For example, they claim: that his appointment was not for a fixed term; that he had no authority or discretionary powers; that he did not have authority to act on behalf of the Village; that he took no oath of office for the position; and that he admitted that he applied for coverage in the Illinois Municipal Retirement Fund, and that his applications to the Firefighters' Pension Fund were denied. In addition, they argue that Rinchich has "offered absolutely no credible evidence in opposition to Chief Billig's affidavit," which states that he was hired as a municipal employee.

Section 3—13—1 provides in pertinent part:

> "All municipal officers, except as otherwise provided, shall receive the salary, fees, or other compensation that is fixed by ordinance. After they are once fixed, these salaries, fees, or other compensation shall not be increased or diminished, so as to take effect during the term of any elected municipal officer.

The salaries, fees or other compensation of any appointed municipal officer, not including those appointed to fill vacancies in elective offices, may be increased but not diminished so as to take effect during the term for which such officer was appointed. Every municipal officer except the mayor, village president, aldermen and trustees shall make and return to the mayor or president, a semi-annual report verified by affidavit, of all fees, and other compensation received by them.

This amendatory Act of 1975 is not a limit on any municipality which is a home rule unit." Ill. Rev. Stat. 1979, ch. 24, par. 3—13—1.

■■ Contrary to Rinchich's assertion, it is clear from a careful reading of its provisions that section 3—13—1 applies only to municipal officers and not to municipal officers and employees.

Section 3—8—1 of the Code, which governs appointed officers in villages, provides:

"The president, by and with the advice and consent of the board of trustees, may appoint (1) a treasurer; (2) one or more street commissioners; (3) a village marshal; and (4) such other officers as may be necessary to carry into effect the powers conferred upon villages." (Ill. Rev. Stat. 1979, ch. 24, par. 3—8—1.)

Section 3—14—2 provides further:

"Whenever a person has been appointed or elected to office, the mayor or president shall issue a certificate of appointment, or election, under the corporate seal, to the municipal clerk. All officers elected or appointed under this Code except the municipal clerk, alderman [sic], mayor, trustees, and president, shall be commissioned by warrant, under corporate seal, signed by the municipal clerk and the mayor, acting mayor, or mayor pro tem, or presiding officer of the board of trustees." (Ill. Rev. Stat. 1979, ch. 24, par. 3—14—2.)

In addition, section 3—14—3 provides that "[b]efore entering upon the duties of their respective offices all municipal officers, whether elected or appointed, shall take and subscribe the following oath." Ill. Rev. Stat. 1979, ch. 24, par. 3—14—3.

At any rate, in this case Rinchich alleges that he was appointed as fire prevention training and education officer by the board of fire and police commissioners and that it had the authority to appoint him. Because he is bound by these allegations (*Calloway v. Allstate Insurance Co.* (1985), 138 Ill. App. 3d 545, 549), Rinchich cannot claim that he has met the above-stated requirements for the appointment of village

officers contained in article 3 of the Code. Moreover, he has neither argued nor demonstrated how the status of fire prevention training and education officer equates with that of a "municipal officer" under section 3—13—1 of the Code.

## B

Rinchich also contends that the "facts of this case clearly disclose that [he] is entitled to the position of Lieutenant in the Village of Bridgeview's Fire Department." Specifically, he argues that from 1971 until 1989, except for a break in service from 1973 to 1977, he served as a full-time firefighter, and until August of 1989 held the rank of lieutenant. He claims that he wore the uniform and badge of a lieutenant; carried the identification card of a lieutenant; was referred to as a lieutenant; fulfilled the duties of a lieutenant, was depicted as a lieutenant in the chain of command; served as a command officer in emergencies; was held out to the public as a lieutenant; and until 1987, when he was excluded from collective bargaining, was compensated in excess of a lieutenant's salary. He claims further that the affidavits of trustees Lammatos, Perion and Andrew Russel demonstrate that the corporate authorities of the Village recognized him as a full-time lieutenant in the fire department.

Defendants maintain that "the totality of the record clearly refutes [Rinchich's] conclusions and supports the findings of the trial court." They argue that Rinchich "has provided no evidence that he was duly appointed to the rank of Lieutenant with the Bridgeview Fire Department." Defendants argue that section 10—2.1—6 of the Municipal Code requires all applicants for positions in the fire department to be under the age of 35. In addition, it provides for firefighter appointments to be made by the board of fire and police commissioners, for public notice to be given, and for a competitive examination to be administered. Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—6.

Rinchich's identification card, which he submitted along with his amended complaint, indicates that he was 37 in 1977 when he returned to the fire department. However, section 10—2.1—6 also provides that the "foregoing age limitation does not apply to any person previously employed as a policeman or fireman in a regularly constituted police or fire department of any municipality, or a Fire Protection District whose obligations were assumed by a municipality under Section 21 of 'An Act in Relation to Fire Protection Districts' or to any person who has served a municipality as a regularly enrolled volunteer fireman for 5 years immediately preceding the time that mu-

nicipality begins to use full time firemen." Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—6.

Defendants also assert that Rinchich has offered no evidence of a commission card certifying his rank as lieutenant. However, the letter of appointment submitted by Rinchich indicates that he was appointed by the board of fire and police commissioners. In addition, attached to the deposition of Chief Billig in response to defendants' motion for summary judgment is a letter from Billig to the board of fire and police commissioners which, although it does not prove that he ever received a commission card, indicates that he was to receive one.

Rinchich testified in his deposition that he took a test in 1979 to become the fire prevention training and education officer, which he claims classified him as a lieutenant. However, he alleged in a Federal civil rights action in 1985 that although he was certified for the position of fire prevention education officer, he received no notice of examinations for the rank of certified lieutenant which were administered in 1983 and 1984.

Nevertheless, attached to the deposition of Chief Billig, which was submitted by Rinchich in response to defendants' motion for summary judgment, is a letter written by Chief Robert E. Murray to the Director of Personnel Standards and Education in Springfield, Illinois, "as documentation of Fire Officer experience for Lieutenant John E. Rinchich of this department." The letter states in part that in May of 1972, he was a full-time lieutenant of the Training Fire Prevention Bureau. The letter also states that in June of 1977, he was appointed as lieutenant and in April of 1979, he was "[c]ertified as Lieutenant by the Fire and Police Commission of Bridgeview." Moreover, defendants do not deny that Rinchich wore the uniform and badge of a lieutenant, but they claim that he wore these items because there was no uniform for his position as fire prevention training and education officer. Nor do defendants dispute that the identification card, which was issued to him upon his return in 1977 after his resignation in 1973, clearly indicates that he is a lieutenant. Further, in his deposition, Chief Billig stated that Rinchich was referred to as a lieutenant and that Rinchich was indicated as a lieutenant in the chain of command. However, the salary ordinance submitted by Rinchich does not demonstrate that he received the salary of a lieutenant, but rather, that the salary of the fire prevention training and education officer was below that of a lieutenant and above that of a firefighter.

Rinchich relies on the authority of *People ex rel. Siegal v. Rogers* (1947), 397 Ill. 187, and *People ex rel. Bubash v. Board of Fire & Police Commissioners* (1973), 14 Ill. App. 3d 1042. In *Siegal*, the relator

joined the Village of Skokie police force in 1934 pursuant to an oral appointment by the village president. Although the president administered an oath to him, Siegal never filed an oath of office or bond with the village clerk and was not appointed by the trustees. In 1945, the village adopted article 14 of the revised Cities and Villages Act (Act), which provided for fire and police commissioners. Soon thereafter Siegal was discharged without a hearing, a protection afforded by the Act. The court noted that the office of policeman was unknown to the common law and that unless created by statute or by ordinance adopted under statutory authority, no such office legally exists. Prior to his discharge, the village did not have an established police department. (*Siegal*, 397 Ill. at 189.) The village argued that Siegal, because of his failure to observe the statutory requirements of appointment and oath, was no more than a *de facto* officer of the village who was subject to discharge at will. In order to compel reinstatement by *mandamus*, the village argued, Siegal had to show he was a *de jure* police officer. (*Siegal*, 397 Ill. at 190-91.) Siegal relied on a provision of the Act which provided that all officers and members of the police department who held their positions for more than one year prior to its adoption were city officers and were entitled to its protection. The court reasoned:

> "The act describes a member of the police department as holding a 'position' and not an 'office.' This is not without significance, because a municipal position need not be created by formal ordinance but may be established by contract, express or implied, and because an appropriation ordinance accompanied by performance of the duties of the position is sufficient to establish the existence of the position. (*People ex rel. Jacobs v. Coffin*, 282 Ill. 599.) Relator, having performed the duties of policeman for eleven years prior to his discharge and having been paid therefor by appropriate ordinances, must be deemed to have held the position of policeman. The plain meaning of the statute is that one who holds the position of member of a police department is automatically elevated to the status of city officer. Thus, a municipality can no longer defeat a policeman's right to the protection of the statute by the simple expedient of refusing to enact an ordinance creating the office of policeman. *** Where a policeman has regularly performed the duties of a member of the police force for a period of one year prior to the adoption of the act and has been remunerated under the authority of an ordinance, a mere recital of the statute in a petition for a writ of *mandamus* to compel reinstatement obviates

the necessity of showing that the office or position was created by ordinance, or that strict compliance was had with the statutory requirements of appointment to office. In short, the statute not only creates the office of municipal policeman, but also specifically directs that any person who has occupied the position of policeman for more than one year prior to the adoption of the act is a municipal officer and is entitled to the protection of the act." *Siegal*, 397 Ill. at 193-94.

The court stated further:

"The statutory provisions relating to the appointment of municipal officers are not controlling on appointments to municipal positions. Upon the authority of *People ex rel. Jacobs v. Coffin*, 282 Ill. 599, we hold that a position may be created and an appointment made thereto by contract, either express or implied, and that one may lawfully hold a municipal position by virtue of a colorable appointment coupled with performance of the duties of the position and remuneration therefor under applicable appropriation ordinances." *Siegal*, 397 Ill. at 195.

Defendants respond that *Siegal* does not apply because "the plaintiff in that case was appointed as a policeman, took an oath of office as a policeman, was paid as a policeman and performed the duties of a policeman, exclusively for eleven years[ ]" whereas in this case the "plaintiff took no oath of office as a firefighter or lieutenant, was not paid as a firefighter or lieutenant, and did not perform the exclusive duties as a firefighter or lieutenant[, and] [a]t best, plaintiff performed as a firefighter and/or lieutenant on an as needed basis. However, plaintiff's primary duties were as the Fire Prevention Training Officer."

Yet, in *Siegal*, as previously noted, the village had never established a police department or created the office of policeman. The subject of the police force was governed by a 1906 ordinance which provided for the appointment of deputy marshals by the president and board of trustees. (*Siegal*, 397 Ill. at 189-90.) Therefore, despite the fact that Siegal was appointed and took an oath, it is clear that his appointment, by the president alone, was in contravention of the ordinance. In addition, it is clear that his appointment would have been invalid under the Act, had it applied at the time. (*Siegal*, 397 Ill. at 190.) Further, as in *Siegal*, Rinchich alleges that he served as a full-time firefighter with the rank of lieutenant. However, although Rinchich also alleges that he was compensated as a lieutenant, the salary ordinance submitted by him does not support this allegation.

In *Bubash*, the court held on the authority of *Siegal* that the plaintiff, who held a position on the police force for almost two years prior to the adoption of the Act, was "blanketed into" the classified service of the police department and was therefore entitled to the protections of the Act. In rejecting the defendants' arguments that the plaintiff was not entitled to revert to the rank of captain because that office was not validly created and therefore the plaintiff's appointment to it was invalid, the court reasoned that *Siegal* and the amendments it interpreted made "the holding of a municipal *position* not a municipal office, the relevant concept in discussing a claim brought under the Act." (Emphasis added.) (*Bubash*, 14 Ill. App. 3d at 1048.) Therefore, because the plaintiff was seeking to revert to his previous position, and because a position may be held by virtue of a colorable appointment coupled with performance of the duties of the position and remuneration therefor, he was entitled to revert to the rank of captain upon his reinstatement to the department. In addition, the court rejected the defendants' argument that amendments to the Act which provided that its provisions applied only to full-time policemen of a regularly constituted police department changed the outcome required by *Siegal*. *Bubash*, 14 Ill. App. 3d at 1046-48.

■■ However, even assuming that Rinchich, by virtue of his prior service as a volunteer fireman, became a full-time firefighter with the rank of lieutenant when the Village adopted article 10 of the Municipal Code, and that pursuant to its provisions he became a city officer, he lost that status when he resigned in 1973. Nevertheless, Rinchich argues on the authority of *Bubash* and *Kagann v. Board of Fire & Police Commissioners* (1975), 28 Ill. App. 3d 209, that he served as both lieutenant and fire prevention training and education officer and that upon his return to the department he should revert to his previous rank as lieutenant. But as defendants correctly point out, *Bubash* and *Kagann* are distinguishable from this case because their holdings rely on section 10—2.1—4 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 10—2.1—4), which provides that a police or fire chief may revert to a previous rank upon resignation or discharge prior to attaining a retirement pension. Rinchich was not a fire chief. Upon his return in 1977, statutory procedures for the appointment of firefighters were in place. It is clear that Rinchich was not appointed in accordance with the statute and that, due to his resignation, he was no longer entitled to the protection of the Act by virtue of his service prior to its adoption.

The cases on which Rinchich relies involved situations in which someone who occupied a *position* prior to the adoption of the Act

was, pursuant to the terms thereof, accorded the status of an officer once the Act was adopted. The plaintiffs in those cases were claiming entitlement to a municipal *position*, to which, in the absence of statutory authority, appointment may be made by contract and which may be held by virtue of a colorable appointment, performance and remuneration therefor. (*Siegal*, 397 Ill. at 194; *Bubash*, 14 Ill. App. 3d at 1047; see also *Reilly v. Board of Fire & Police Commissioners* (1975), 32 Ill. App. 3d 142.) However, Rinchich is seeking entitlement to a municipal *office* based on a colorable appointment, performance and compensation therefor, while statutory authority is in place.

The Code provides that "[t]he sole authority to issue certificates of appointment shall be vested in the Board of Fire and Police Commissioners." (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—4; see also *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 529 (in which the court stated that "[t]he authority to hire, promote, discharge and reward firefighters is vested by statute in the board of fire and police commissioners. [Citation])".) Once the board of fire and police commissioners is established, the president and the board of trustees no longer have the right to appoint any police officers except the chief of police. (*Young v. Board of Trustees of the Police Pension Fund* (1978), 57 Ill. App. 3d 689, 693, citing *People ex rel. Gasparas v. Village of Justice* (1967), 88 Ill. App. 2d 227, 237-38.) Therefore, the corporate authorities did not have the authority to appoint Rinchich. Further, as defendants point out, contracts which are expressly void may not be rendered valid by estoppel. (*Ligenza v. Village of Round Lake Beach* (1985), 133 Ill. App. 3d 286, 291.) Consequently, we reject this contention of error.

## C

As previously noted, in his amended complaint Rinchich alleged that "[o]n March 28, 1979, [he] was appointed by the Board of Fire and Police Commissioners to the position of Fire Prevention Education and Training Officer." In support of this allegation, he submitted a letter he received from the board of fire and police commissioners which stated in part:

> "By action of the Board of Fire and Police Commissioners, you are hereby appointed to the position of Fire Prevention Education and Training Officer."

In their motion for summary judgment, defendants argued that the position of fire prevention training and education officer was created by the Village and that the Village retained the authority to abol-

ish that position. In support of this position, defendants submitted the affidavit of Chief Billig which stated in part:

"On or about April 1, 1979, John Rinchich became the Village's Fire Prevention Training Officer, which is a civilian position."

Rinchich contends on appeal that defendants abolished the position of fire prevention training and education officer in order to punish him for his political activities. Section 10—2.1—18 of the Municipal Code provides in part:

"Fire or police departments—Reduction of force—Reinstatement. When the force of the fire department or of the police department is reduced, and positions displaced or abolished, seniority shall prevail and the officers and members so reduced in rank, or removed from the service of the fire department or of the police department shall be considered furloughed without pay.

If any positions which have been vacated because of reduction in forces or displacement and abolition of positions, are reinstated, such members and officers of the fire department or of the police department as are furloughed from the said positions shall be notified by the board by registered mail of such reinstatement of positions and shall have prior right to such positions if otherwise qualified, and in all cases seniority shall prevail." Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—18.

Although Rinchich acknowledges that, pursuant to section 10—2.1—18, a municipality has a right to reduce its force, he argues that a reduction in force motivated by a desire to punish a party for political activity is invalid. (*Yeley v. Bartonville Fire & Police Comm'n* (1979), 77 Ill. 2d 271.) Rinchich contends that the affidavits of James Russell and Rutkowski demonstrate that the Village intended to retaliate against him because of his participation in the activities of an opposing political party and that because the statements were made by Chief Dooley, an agent of the Village who was acting in the scope of his employment, they are not hearsay. Moreover, he further contends that his affidavit, which was not stricken by the trial court, sets forth the same facts with respect to the conversation with Chief Dooley. Because defendants have failed to rebut these contentions, Rinchich argues that a genuine issue of material fact exists, precluding the entry of summary judgment.

Defendants respond, pursuant to the assumption that Rinchich's cause of action "is based upon a due process constitutional claim" that, as in the case of *Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701, Rinchich "had

no constitutionally protected interest in the training officer's position[ ]" because "as the Fire Prevention Training and Education Officer, John Rinchich was a municipal employee who was terminable at will."

Defendants argue further that the affidavits submitted by Rinchich did not comply with Supreme Court Rule 191(a), and that even assuming they were not stricken, they would not create an issue of material fact. They note that Chief Dooley was not a policy maker for the Village and that he did not identify to which corporate authority he was referring. They note further that Rinchich has not shown a nexus between the statements and defendants' actions. Moreover, defendants argue on the authority of *Elrod v. Burns* (1976), 427 U.S. 347, 49 L. Ed. 2d 547, 96 S. Ct. 2673, that because Rinchich was not terminated or discharged when the position of fire prevention training and education officer was eliminated but was returned to the rank of a fireman, he has not stated a cause of action.

Rinchich's affidavit, which was not stricken by the trial court, provides in pertinent part:

"12. On several occasions in the year 1987, I had conversations with Fire Chief Dooley, wherein he advised me that the corporate authorities of the Village of Bridgeview were determined to fire me, for the following reasons:

(a) The Mayor and the Board of Trustees wished to fire me because I was a member of an opposing political party;

(b) The corporate authorities wished to fire me in retaliation for a lawsuit previously filed against the Village of Bridgeview protesting certain actions that the Village had taken, which I deemed to be unlawful."

■ In light of Rinchich's complaint, Rinchich's letter of appointment, Rinchich's affidavit, defendants' motion for summary judgment and Chief Billig's affidavit, we hold that there are genuine issues of material fact as to whether Rinchich was or was not a civilian employee and, therefore, as to whether the position of fire prevention training and education officer was abolished in good faith. However, we note that Rinchich has waived the collective bargaining issue by failing to argue it on appeal. 134 Ill. 2d R. 341(e)(7).

For all of the above-stated reasons, we reverse the circuit court's May 21, 1990, order striking the affidavits referred to above. We affirm the court's July 16, 1990, order insofar as it holds that defendants did not violate section 3—13—1 of the Municipal Code and that Rinchich was not entitled to the position of lieutenant in the Bridgeview fire department. However, we find that there is a genuine issue

of material fact as to whether or not Rinchich was a civilian employee and therefore as to whether the position of fire prevention training and education officer was abolished in bad faith.

Affirmed in part and reversed in part and remanded.

DiVITO and McCORMICK, JJ., concur.