CINCINNATI COMPANIES, Plaintiff-Appellee, v. WEST AMERICAN INSURANCE COMPANY, Defendant-Appellant.

Second District   No. 2—96—0467

Opinion filed April 9, 1997.

506

Robert Marc Chemers and Anne S. Johnson, both of Pretzel & Stouffer, Chartered, of Chicago, for appellant.

Patricia R. Morton, James P. DeNardo, and Kristin L. Dvorsky, all of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The defendant, West American Insurance Company (West American), appeals from the April 8, 1996, order of the circuit court of Du Page County granting summary judgment in favor of the plaintiff, the Cincinnati Companies (Cincinnati), on its complaint for declaratory judgment. The trial court ruled that West American was liable to Cincinnati for an equitable share of Cincinnati's expenses in the defense and settlement of a personal injury action filed in the circuit court of Will County. West American's equitable share was determined to be $29,384.50, and judgment was subsequently entered against West American in that amount. We affirm.

In 1989, Lorren Kessel filed a personal injury lawsuit in the circuit court of Will County (the underlying action). The underlying action arose out of injuries Kessel sustained while performing construction work at the Lockport train station. Among the defendants named in the underlying action were Baird Land Surveyors (Baird) and William Grady, doing business as B&D Home Repair and Builders (B&D).

Cincinnati had issued an insurance policy to another contractor on the project, Champion Drywall. This policy named Baird as an additional insured. Upon receipt of service of process in the underlying action, Baird tendered the action to its own insurer, which, in turn, tendered the defense to Cincinnati. Cincinnati then retained counsel to defend Baird in the underlying action.

West American had issued an insurance policy to B&D. Pursuant to this policy, West American retained counsel to defend B&D in the underlying action. This policy also named Baird as an additional insured. Baird, however, was not aware that it was an additional insured under the West American policy.

During the course of litigation, Baird propounded interrogatories to B&D that specifically requested that B&D identify the name of each insured under the West American policy. In response to this inquiry, B&D failed to disclose that Baird was named as an additional insured. Baird also requested that B&D produce a copy of the West American policy. Although B&D responded to the production request, it did not provide a copy of the policy endorsement that named Baird as an additional insured. B&D's responses to these discovery requests were signed by the attorney retained by West American to defend B&D in the underlying action.

The underlying action was scheduled for trial on three separate occasions. On January 27, 1992, which was the third trial date, B&D's attorney turned over a document to Baird's attorney that disclosed

that Baird was named as an additional insured under the West American policy. Following this disclosure, Baird's attorney discussed the matter with Baird's president, Barbara Baird, and then immediately tendered the defense to West American. West American rejected the tender.

On February 17, 1992, the underlying action was settled between the parties. Cincinnati paid Kessel $30,000 on Baird's behalf, and West American paid Kessel $30,000 on B&D's behalf. Prior to settlement, Cincinnati and West American entered into a stipulation reserving Cincinnati's right to pursue a contribution action against West American for reimbursement of the settlement amount, as well as its attorney fees in defending Baird in the underlying action.

On June 25, 1993, Cincinnati filed the instant action against West American seeking a declaration that, pursuant to the doctrine of equitable contribution, West American was obligated to reimburse Cincinnati for the defense costs and indemnity payments that it made on behalf of Baird in the underlying action. On January 4, 1995, Cincinnati filed a motion for summary judgment. In support of its motion, Cincinnati attached the affidavit of Barbara Baird. In her affidavit, Barbara Baird averred that (1) a company named AVA handled all of Baird's insurance matters; (2) she had never had any insurance training or classes dealing with insurance; (3) she was unaware that Baird was listed as an additional insured under the West American policy until January 27, 1992; and (4) she considered B&D responsible for the accident at the construction site and preferred to have B&D's insurance pay for Baird's defense and settlement.

On January 12, 1996, West American filed a response to Cincinnati's motion for summary judgment, along with its own cross-motion for summary judgment. On January 17, 1996, West American also filed a motion to strike the affidavit of Barbara Baird, alleging that it was conclusory and without foundation.

On April 8, 1996, after a hearing on these motions, the trial court granted Cincinnati's motion for summary judgment and denied West American's cross-motion for summary judgment. As to West American's motion to strike Barbara Baird's affidavit, the trial court stated that it would only utilize "those aspects of the affidavit that complied with the rules." The trial court's order provides, in pertinent part:

"(1) The court, aware of defendant's motion to dismiss the affidavit of Barbara Baird and the [r]esponse thereto, utilized those aspects of the affidavit that complied with the applicable rules.
***

(3) The [a]nswers to [i]nterrogatories provided to Baird made no

reference to the West American *** policy and foreclosed Baird's opportunity to make a reasonable judgment as to tender.

(4) The lack of tender must not be attributed to Baird but to West American through the actions of *** B&D['s] attorney in the [underlying action].

(5) West America should share equitably in settlement costs and for reasonable attorney fees incurred in [the underlying action] from the date of service of the [i]nterrogatories: January 2, 1991."

On April 18, 1996, Cincinnati filed a motion seeking the entry of a money judgment against West American for its equitable share of the settlement and defense costs of the underlying action. Cincinnati sought judgment in the amount of $15,000, which was one-half of the $30,000 settlement paid by Cincinnati in the underlying action, in addition to attorney fees in the amount of $14,384.50, which represented one-half of the total attorney fees incurred by Cincinnati in defending the underlying action after the date of January 2, 1991. On April 24, 1996, the trial court entered judgment in favor of Cincinnati in the amount of $29,384.50. West American filed a timely notice of appeal as to the trial court's ruling on the cross-motions for summary judgment, as well as the money judgment entered on Cincinnati's behalf.

West American's first argument on appeal is that the trial court erred in finding that, as a matter of law, it was liable to Cincinnati for an equitable share of Cincinnati's settlement and defense costs. West American argues that an insurer has no obligation to an insured absent tender of the claim by the insured. West American contends that Baird never made such a tender in the underlying action and that the trial court erred in attributing this lack of tender to the conduct of B&D's attorney.

■ The purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists (*Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)) and should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2—1005(c) (West 1994)). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. *In re Estate of Herwig*, 237 Ill. App. 3d 737, 741 (1992). The disposition of a summary judgment motion is not discretionary and the standard of review is *de novo*. *Quinton v. Kuffer*, 221 Ill. App. 3d 466, 471 (1991).

■ In the context of insurance law, the doctrine of equitable con-

tribution permits an insurer who has paid the entire loss to be reimbursed from other insurers who are also liable for the loss. *Aetna Casualty & Surety Co. v. James J. Benes & Associates, Inc.*, 229 Ill. App. 3d 413, 417 (1992). This rule is applied in cases where one insurer has paid a debt equally owed by other insurers. *Benes*, 229 Ill. App. 3d at 417. The fact that an insurer undertakes the burden of a full settlement payment prior to a possible judgment does not mean that the insurer is a volunteer and the insurer, therefore, is not precluded from recovering contribution from other insurers liable for the same loss. *Benes*, 229 Ill. App. 3d at 417.

West American does not contest the fact that Baird was named as an additional insured under the West American policy and was covered for the construction accident alleged in the underlying action. Rather, West American argues that the doctrine of equitable contribution does not apply in the instant case because Baird never tendered the defense in the underlying action to West American. Relying on *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70, 80 (1992), West American argues that an insurer's coverage obligations under an insurance policy are not triggered until the insured actually tenders the defense in an action that falls within the policy's coverage.

In *Institute of London*, Great Lakes was the named insured on a policy of insurance issued by Hartford and an additional insured on a policy issued by the Institute. 234 Ill. App. 3d at 71. After a lawsuit was filed against Great Lakes, Great Lakes tendered the defense of the suit to the Institute. *Institute of London*, 234 Ill. App. 3d at 72. Great Lakes never tendered the defense of the suit to its own insurer, Hartford. *Institute of London*, 234 Ill. App. 3d at 72. After the Institute defended Great Lakes and settled the underlying action, it filed a declaratory judgment action against Hartford for reimbursement of 50% of the settlement amount. *Institute of London*, 234 Ill. App. 3d at 71. The trial court granted summary judgment in favor of Hartford. *Institute of London*, 234 Ill. App. 3d at 71.

On appeal, the appellate court affirmed the trial court's decision, finding that Hartford was not obligated to contribute to the settlement because Great Lakes had tendered the defense to the Institute, rather than Hartford. *Institute of London*, 234 Ill. App. 3d at 78-80. The court held that, in instances where two insurance policies potentially apply to a loss, the insured may elect which insurer it desires to defend and indemnify the claim by tendering the defense to that insurer and not the other. *Institute of London*, 234 Ill. App. 3d at 78-80. Such an election forecloses the settling insurer from obtaining contributions from the nonsettling insurer. *Institute of*

*London*, 234 Ill. App. 3d at 80. The court also held that coverage cannot be triggered by tender from a rival insurer. *Institute of London*, 234 Ill. App. 3d at 80.

This court has rejected the holding in *Institute of London* and has adopted a different test for determining when an insurer's coverage obligation is triggered. In *Federated Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 282 Ill. App. 3d 716, 726 (1996), we held that an insurer's duty to defend claims potentially falling within the terms of a policy is triggered when the insurer has actual notice of the lawsuit, regardless of whether there has been an actual tender of defense by the insured.

In *Federated Mutual*, Federated issued an insurance policy covering a fleet of automobiles that a car dealership permitted its service customers to use while their vehicles were being repaired. 282 Ill. App. 3d at 718. An employee of the car dealership permitted her friend, Kathleen Gallagher, to drive one of these vehicles. *Federated Mutual*, 282 Ill. App. 3d at 718. Gallagher was subsequently involved in an accident and sued. *Federated Mutual*, 282 Ill. App. 3d at 718. Gallagher contacted her own automobile insurance carrier, State Farm, which in turn sent a letter to Federated notifying it of the suit and tendering the defense. *Federated Mutual*, 282 Ill. App. 3d at 718-19. Federated then filed a declaratory judgment action seeking a determination that it had no duty to defend Gallagher because she did not tender defense of the lawsuit to Federated. *Federated Mutual*, 282 Ill. App. 3d at 719. The trial court granted summary judgment in favor of Federated, ruling that actual tender of the insured was a prerequisite to any duty to defend or indemnify. *Federated Mutual*, 282 Ill. App. 3d at 719.

On appeal, we reversed the trial court's ruling and held that an insured need not tender the defense of a lawsuit to the insurer in order to trigger the insurer's duty to defend, noting:

> "If it has actual notice a lawsuit has been filed against one of its insureds, the insurer understands its insured will require a defense. Furthermore, based on its experience, the insurer should assume its insured will desire the insurer provide such a defense. ***
>
>          * * *
>
> *** [A]n insurer's duty to defend claims potentially falling within the terms of a policy is triggered by actual notice of a lawsuit, regardless of whether the insured is sophisticated or unsophisticated—provided the insured has not selected one insurer to provide an exclusive defense and there is no prejudice to the insurer." *Federated Mutual*, 282 Ill. App. 3d at 725-26.

We therefore held that Federated's duty to defend had been triggered at the time that it received actual notice of the lawsuit from State Farm. *Federated Mutual*, 282 Ill. App. 3d at 727. We further concluded that there was no evidence that Gallagher made a coverage choice between State Farm and Federated, commenting:

> [T]he facts of this case do not indicate that Gallagher made a choice between State Farm and Federated. There is no evidence in the record indicating that Gallagher knew she might be insured under the Federated policy. The record does not indicate that Gallagher investigated the matter, concluded that she also might be insured by Federated, and then made the decision to choose State Farm to defend her instead of Federated." *Federated Mutual*, 282 Ill. App. 3d at 724.

Our holding in *Federated Mutual* specifically considered and rejected the rule of law articulated in *Institute of London*, commenting:

> "Unlike the court in *Institute of London* \*\*\*, we conclude that— despite any special experience, competence, or resources the insured may possess—actual notice of a claim against the insured may be sufficient to trigger the insurer's duty to defend. \*\*\* [A]ctual notice means notice sufficient to permit the insurer to locate and defend the lawsuit." *Federated Mutual*, 282 Ill. App. 3d at 726.

We therefore declined to follow *Institute of London* except in those instances where the insured has specifically selected one insurer to provide an exclusive defense and there is no prejudice to the insurer. *Federated Mutual*, 282 Ill. App. 3d at 726. Accord *Continental Casualty Co. v. Security Insurance Co.*, 279 Ill. App. 3d 815, 821 (1996).

■ In light of the principles articulated in *Federated Mutual*, we conclude that West American had actual notice of the underlying action so as to trigger its duty to defend and indemnify Baird. At the time that the underlying action was filed, B&D tendered defense of the action to West American. In response to this tender, West American retained counsel to represent B&D. Therefore, from the very onset of the underlying action, West American was aware that both of its insureds, Baird and B&D, were named as defendants. Such information provided sufficient notice for West American to locate and defend the lawsuit on Baird's behalf.

Furthermore, the facts herein demonstrate that at no time did Baird affirmatively select either Cincinnati or West American to provide an exclusive defense. As was the case of the insured in *Federated Mutual*, there is no evidence in the record indicating that Baird knew that it might be insured under the West American policy. The record does not indicate that Baird investigated the matter, concluded

that it might be insured by West American, and then selected Cincinnati to defend it rather than West American. Moreover, we note that Baird may have been deprived of making such a choice due to the manner in which B&D responded to Baird's discovery requests. As noted above, such discovery responses failed to disclose that Baird was named as an additional insured on the West American policy. As soon as this fact was disclosed, Cincinnati made an immediate tender of defense to West American on behalf of Baird.

Furthermore, we do not believe that triggering West American's coverage obligation to Baird will result in undue prejudice. West American had actual notice of the lawsuit from the very beginning of the litigation in the underlying action. Through its retained counsel for B&D, West American actively participated in the litigation and settlement of the underlying case. Indeed, the defense of Baird was tendered before West American settled the underlying action. The sole reason that the defense of Baird was not tendered sooner was due to B&D's incomplete responses to discovery.

The existence of insurance is properly ascertained through the use of discovery procedures. *People ex rel. Terry v. Fisher*, 12 Ill. 2d 231, 238-40 (1957). In responding to Baird's discovery requests, B&D's attorney was therefore under an obligation to thoroughly investigate the records available and inquire as to the knowledge of all corporate agents. *Chicago Park District v. Chicago & North Western Transportation Co.*, 240 Ill. App. 3d 839, 865-66 (1992). An attorney retained by the insurer represents both the insurer and the insured. *Rogers v. Robson, Masters, Ryan, Brumund & Belom*, 74 Ill. App. 3d 467, 471 (1979).

In the instant case, West American retained an attorney to represent B&D in the underlying action. As this attorney was retained by West American, he was necessarily West American's agent. See *Rogers*, 74 Ill. App. 3d at 471. B&D's attorney therefore acted on West American's behalf when he responded to Baird's discovery requests. For this reason, we agree with the trial court that Baird's inability to make a reasonable judgment as to tender can be attributed to West American and conclude that West American is liable for its equitable share of Cincinnati's settlement and defense costs in the underlying action.

■ West American's next argument is that the trial court erred in denying its motion to strike Barbara Baird's affidavit. As detailed above, the affidavit avers that Barbara Baird did not know that Baird was named as an additional insured under the West American policy and that she would have preferred that West American pay for Baird's defense and settlement. West American argues that these statements were conclusory and without foundation.

The sufficiency of an affidavit in support of a motion for summary judgment is governed by Supreme Court Rule 191 (145 Ill. 2d R. 191). Rule 191 is satisfied " 'if from the document as a whole it appears the affidavit is based on the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents.' " *Allied American Insurance Co. v. Mickiewicz*, 124 Ill. App. 3d 705, 708 (1984), quoting *Burks Drywall, Inc. v. Washington Bank & Trust Co.*, 110 Ill. App. 3d 569, 576 (1982). The granting of a motion to strike a Rule 191 affidavit is within the sound discretion of the trial court. *Lake County Trust Co. v. Two Bar B, Inc.*, 238 Ill. App. 3d 589, 599 (1992).

Contrary to West American's assertions, it appears that the trial court did not consider the portions of the affidavit that were improper under Rule 191. The trial court made the following ruling: "Rather than strike the affidavit, I think what I would prefer to do is simply disregard those provisions which do not comply with the statute." West American therefore essentially received the relief it sought by filing the motion to strike. Rather than striking an affidavit in its entirety, a trial court should only strike those matters that are improper. *Rinchich v. Village of Bridgeview*, 235 Ill. App. 3d 614, 622 (1992). As West American only objected to two of the affidavit's five paragraphs, there was no need for the trial court to strike the entire document.

We additionally note that, even excluding Barbara Baird's affidavit, the remaining pleadings and evidentiary materials support the trial court's entry of summary judgment on behalf of Cincinnati. See *Tower Oil & Technology Co. v. Buckley*, 99 Ill. App. 3d 637, 645 (1981). As we have noted above, West American's coverage obligations were triggered by its actual knowledge of the lawsuit. See *Federated Mutual*, 282 Ill. App. 3d at 726. Notwithstanding the content of Barbara Baird's affidavit, the record demonstrates that West American received actual knowledge of the lawsuit at the time that B&D made its tender of defense.

■ As its final argument, West American contends that, if it does owe Cincinnati reimbursement for indemnity and expense costs, it should not be liable for costs incurred by Cincinnati prior to January 28, 1992, the day on which Cincinnati formally requested contribution. As noted above, the trial court ruled that West American was responsible for all costs incurred after January 2, 1991, which was the date that B&D's attorney served responses to Baird's discovery requests. West American argues that it should not be held responsible for litigation costs incurred prior to Cincinnati's tender, as it had no control over the determination of how these costs were incurred. We disagree.

West American's coverage obligations were not triggered at the time of Cincinnati's tender of defense, but at the time it had actual knowledge of the underlying action. *Federated Mutual*, 282 Ill. App. 3d at 726. As we have already discussed, West American possessed such actual knowledge at the time B&D tendered defense of the underlying action, as well as the time B&D's attorney responded to Baird's discovery requests concerning coverage under the West American policy. We therefore agree with the trial court's determination that West American's obligations to defend and indemnify also began at this time. If West American desired to have input or control over the manner in which litigation funds were expended, it certainly could have become involved once it was aware of its coverage obligations to Baird under its policy. West American's failure to do so, however, will not excuse its obligations under the law.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

THOMAS and RATHJE, JJ., concur.